UNITED STATES, Appellee

v

GERALD P. NARDELL, Staff Sergeant, U. S. Marine Corps, Appellant

21 USCMA 327, 45 CMR 101

*Lieutenant David C. Sellergren*, JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant David G. Grimes, Jr.*, JAGC, USNR.

*Lieutenant Winston J. Hughes*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.*, JAGC, USN.

## Opinion of the Court

DARDEN, Chief Judge:

Guilty findings on charges alleging two violations of the Uniform Code of Military Justice and a sentence consisting of a bad-conduct discharge, confinement at hard labor for six months, a $500 fine, forfeiture of $125 per month for six months, and reduction in grade remain in force against the appellant at this stage of appeal. This Court granted review to consider the contention that Charge I and its specification do not allege an offense.

Relative to the granted issue, the record contains evidence that in June and July 1970, Nardell was assigned as the assistant manager of a staff noncommissioned officers' club in Da Nang, Republic of Vietnam, and that he played the club's slot machines while assigned to such duty.

In material part, the single specification under Charge I reads:

". . . In that Staff Sergeant Gerald P. NARDELL, . . . did at the Marine Aircraft Group Sixteen Staff Non Commissioned Officers Club, Marble Mountain Air Facility, DaNang, Republic of Vietnam, during the months of June and July 1970, violate a lawful general order, to wit: paragraph 301.4c of Wing Order P1746.6C First Marine Aircraft Wing, dated 3 March 1970, by playing club slot machines while on duty as the manager of Marine Aircraft Group Sixteen Staff Non Commissioned Officers Club."

Wing Order P1746.6C, issued by the Commanding General, 1st Marine Aircraft Wing, Fleet Marine Force, Pacific, and entitled "Standing Operating Procedure (SOP) for the Clubs and Mess System" is set out in part below:

"Ref: (a) CMC msg 031923Z Sep 65 (NOTAL)

(b) CMC ltr DSQ-ded of 11 Oct 65 (NOTAL)

(c) MCO P1746.13–

(d) NAVSO P–2409

. . . . .

"1. *Purpose.* To establish a Standing Operating Procedure for the clubs and mess system of the 1st Marine Aircraft Wing, to include: the Enlisted Club, the Staff Noncommissioned Officers' Club, the Commissioned Officers' Mess (Open), and the Central Service Agency.

. . . . .

"3. *Background*

"a. References (a) and (b) authorized the establishment of a 1st Marine Aircraft Wing Club and Mess System. References (c) and (d) prescribe regulations, procedures and financial control measures for operation of nonappropriated fund clubs and messes under the cognizance of the Commandant of the Marine Corps.

. . . . .

"c. Subject to the above references and other directives as may be issued

**328**

by competent authority, the Commanding General is charged with the responsibility for operation of messes, clubs and miscellaneous nonappropriated fund activities in this command.

"4. *Action.* Commanding Officers who have authorized branch clubs of of the 1st Marine Aircraft Wing System established in their area of responsibility will ensure compliance with the provisions of this SOP by personnel assigned to the branches and related staff personnel. All personnel assigned duties in connection and administration of the clubs and messes shown in paragraph 1 will be governed by the provisions in references (c) and (d) and this order.

"5. *Recommendation.* Comments and recommendations relative to this SOP are invited and should be forwarded in writing to the Commanding General, 1st Marine Aircraft Wing, attention Wing Clubs Officer.

"6. *Applicability.* This order is applicable to all units of the 1st Marine Aircraft Wing and to all clubs or mess facilities of the 1st Marine Aircraft Wing Clubs System."

Paragraph 301.4, "EXCERPT OF WING ORDER P1746.6C," has a subparagraph captioned "GAMING AND AMUSEMENT DEVICE OPERATIONS." Section c of this subparagraph covers the eligibility of players in the following language:

"c. *ELLIGIBILITY* [*sic*] *OF PLAYERS.* All members of the appropriate component club syster [sic] are eligible to play slot machines except minors and clubs and messes employees while in a duty status. Guests, defined as any person other than U. S. Armed Forces personnel and technical representatives authorized full club privileges, are pormitted [sic] to play, however, the host shall sign for any jackpot won."

No single characteristic of a general order determines whether it applies punitively to members of a command. This Court's decisions have established general standards that such an order must meet before a member of the armed forces without actual notice of its provisions can be punished for violating it. The order in its entirety must demonstrate that rather than providing general guidelines for the conduct of military functions it is basically intended to regulate conduct of individual members and that its direct application of sanctions for its violation is self-evident. United States v Hogsett, 8 USCMA 681, 25 CMR 185 (1958); United States v Baker, 18 USCMA 504, 40 CMR 216 (1969); cf. United States v Benway, 19 USCMA 345, 41 CMR 345 (1970). If the order requires implementation by subordinate commanders to give it effect as a code of conduct, it will not qualify as a general order for the purpose of an Article 92[1] prosecution. United States v Tassos, 18 USCMA 12, 39 CMR 12 (1968), and United States v Woodrum, 20 USCMA 529, 43 CMR 369 (1971).

The record indicates that the referenced authorities for Wing Order 1746.6C are so voluminous that their complete reproduction was impractical. Introductory pages from references MCO P1746.13B and NAVEXOS P-2409 indicate, however, that the former concerns a "Manual for Clubs and Messes" that "is published for instruction and guidance pursuant to governing laws and regulations, and is applicable to subject activities under the management control of the Commandant of the Marine Corps." The latter relates to instructions that "apply to and are issued for the information, guidance, and compliance of all personnel administering or accounting for nonappropriated funds classified as government instrumentalities."

Wing Order P1746.6C, the "purpose" of which is the establishment of a

---

[1] Article 92, Uniform Code of Military Justice, 10 USC § 892.

standing operating procedure is, consistent with those references, broad in its guidance. Under paragraph 3 of the Order with which we are concerned, the commanding general is charged with the responsibility of operating messes, clubs, and miscellaneous nonappropriated fund activities in his command. But paragraph 4 enjoins commanding officers with established branch clubs in their area to assure compliance with the provisions of the Order. To this point, nothing in the Order suggests that it is other than advisory or instructional. The one provision that arguably could operate as a code of conduct establishes a general eligibility to play slot machines and then excludes designated classes of persons, including club and mess employees while they are in a duty status. We are unable to agree that such an indirect prohibition in an order addressed to a distribution list is clear enough notice to a mess or club employee that he should be charged with knowledge of such a prohibition.

The provisions of the Order on this subject impress us as being predominantly instructional and ▉▉▉▉▉ ▉ directory instead of a code of conduct. Subordinate commanders should provide specific notice of the prohibition against slot machine play by employees of clubs or messes. Wing Order P1746.6C, standing alone, is not enforceable as a general order against club or mess employees who play slot machines in a duty status. *Tassos* and *Woodrum*, both supra.

That part of the Court of Military Review decision affirming Charge I is reversed. Charge I and its specification are dismissed. The record of trial is returned to the Judge Advocate General of the Navy for submission to the Court of Military Review for assessment of a sentence based on the remaining finding of guilty.

Judges QUINN and DUNCAN concur.