UNITED STATES

v.

**Airman First Class Michael W. GREY, FR 318–48–0886 3415th Consolidated Maintenance Squadron Lowry Technical Training Center (ATC).**

**ACM 22045.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 8 March 1976.

Decided 7 June 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner and Major Byron D. Baur. Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major John A. Cutts III.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

## DECISION

LeTARTE, Chief Judge:

*Consonant* with his pleas, the accused was convicted of two specifications alleging violations of a lawful general regulation[1] by possessing and selling cocaine, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. He was sentenced to be discharged from the service with a bad conduct discharge, to be confined at hard labor for 10 months, to forfeit $100.00 per month for 10 months and to be reduced *in* grade *to* airman basic.

Appellate defense counsel have assigned the following errors:

I

THE MOTION FOR DISMISSAL SHOULD HAVE BEEN GRANTED, BECAUSE AFR 30–2 IS NON–PUNITIVE.

II

THE APPELLANT WAS PREJUDICED ON SENTENCING BY TRIAL COUNSEL'S REFERENCES TO "GENERAL DETERRENCE" CONCEPTS IN HIS ARGUMENT TO THE MILITARY JUDGE.

In support of their first assignment of error, appellate defense counsel have invited our attention to the excellent brief submitted by trial defense counsel at trial. The defense motion to dismiss the Charge and its specifications on the basis of the nonpunitive nature of the regulation in issue was premised principally upon the Court of Military Appeals' decisions in *United States v. Nardell*, 21 U.S.C.M.A. 327, 45 C.M.R. 101 (1972), and *United States v. Scott*, 22 U.S.C.M.A. 25, 46 C.M.R. 25 (1972). In *Nardell*, the Court perceived the order therein allegedly violated "as being predominantly instructional and directory instead of a code of conduct," and indicated:

No single characteristic of a general order determines whether it applies punitively to members of a command. This Court's decisions have established general standards that such an order must meet before a member of the armed forces without actual notice of its provisions can be punished for violating it. The order in its entirety must demonstrate that rather than providing general guidelines for the conduct of military functions it is basically intended to regulate conduct of individual members and that its direct application to sanctions for its violation is self-evident . . . If the order requires implementation by subordinate commanders to give it effect as a code of conduct, it will not qualify as a general order for the purpose of an Article [92] prosecution.

*45 C.M.R. 101 at 103.*

In *Scott*, the Court added that general orders, like penal statutes, are to be strictly construed and that "if a general order is to provide a course of conduct for servicemen and a criminal sanction for a failure to abide by it," the order must "clearly state therein to whom the provisions are applicable and whether or not further implementation is required as a condition to its effectiveness as a criminal law."

The purpose of AFR 30–2 is explained in its preamble, as follows:

This regulation establishes and defines functionally the Air Force Social Actions Program. It identifies the program manager and assigns responsibility. It explains Air Force policy for the Social Actions, Equal Opportunity and Treatment, and Drug and Alcohol Abuse Control Programs. It further tasks MAJCOMs to

1. Air Force Regulation 30–2, Social Actions *Program*, 1 August 1974, paragraph 4–46.

develop a written action plan in support of the regulation, as well as to provide formal training for social actions personnel. It requires both base and MAJCOM to provide written reports . . . The regulation applies, in whole or in part, to Air Force military personnel, including the Air Force Reserves, Air National Guard, DAF civilian employees, and dependents of military personnel. This regulation provides prohibitions concerning drugs and further provides for disciplinary action under the Uniform Code of Military Justice, for violations of these prohibitions.[2]

The Air Force's Drug Abuse Control Program is defined in Chapter 4 of the regulation, and Section I thereof, entitled, PROHIBITIONS AND PENALTIES, provides:

4–46. Use, Possession, Sale, and Transfer of Drugs. Members subject to the Uniform Code of Military Justice (UCMJ) and DAF civilian employees will not use, possess, sell, transfer or introduce into a military unit, base, station, post, ship, or aircraft any such drug as specified in paragraph 4–2.[3] Violations of this prohibition are chargeable under the UCMJ, Article [92(1)], "Failure to Obey Order or Regulation. . . ."

At first blush, the provisions of AFR 30–2 do not appear dissimilar from those of the USARPAC regulation that the Court in *Scott* found to be inapplicable punitively to individual servicemen. Both regulations were intended, in part, to prescribe the basic requirements for a program designed to control drug abuse. In *Scott*, however, the regulatory provisions were specifically made applicable only "to all commands subordinate to [USARPAC] headquarters", and implementation was required to provide "such additional measures as are necessary to establish and maintain a uniform and viable drug suppression program . . ." On the other hand, the provisions of AFR 30–2 meet all the tests provided in *Nardell*

and *Scott.* The regulation clearly indicates that it is applicable to "Air Force military personnel," that it provides prohibitions for drug abuse, that violations of those prohibitions are punishable under Article 92, and, significantly, that implementation is not required as a *prerequisite* to criminal sanctions for its violation.

We are not persuaded to hold differently on the basis of trial defense counsel's contention that AFR 30–2 was intended by its own terms to prescribe the basic requirements for the Air *Force* Social Actions Program rather than being designed as a code of conduct. The short answer to that argument is that the regulation properly serves both purposes. In this regard, counsel's interpretation of the statement in *United States v. Hogsett*, 8 U.S.C.M.A. 681, 25 C.M.R. 185 (1958), that

[a] regulation which combines advisory instructions with other instructions which contain a specific penalty for noncompliance is not intended as a general order or regulation, within the meaning of Article 92 . . .

is *misconceived. Hogsett* dealt with a regulation that was simply intended as a guide to military postal clerks and which expressly declared that it contained instructions and information that merely duplicated and interpreted postal laws and the Post Office Department Manual. Under such circumstances, including the lack of an express or referenced penalty provision, the Court found that the failure to observe the provision allegedly violated did not constitute a criminal offense. Furthermore, that the drafter of the regulation did not intend that its provisions subject individuals to punishment under Article 92 was amply demonstrated by the references to the specific prohibitions and penalties provided in the United States Code for such postal law violations. Thus, for example, under a *paragraph* captioned "Offenses against the Mails," every offense listed was related to a

2. The *last* sentence was added to the preamble per CSAF Message, subject: Emergency Change to AFR 30–2, Social Actions Program, Part 1a, dated 9 January 1975.

3. Paragraph 4–2c of the regulation defines narcotics as "*any opiates* or cocaine, including their synthetic equivalents."

particular penal provision of the United States Code.

Obviously, therefore, *Hogsett* was not intended to preclude the military services from promulgating regulations that combine advisory functions with self-evident criminal sanctions for violations of its provisions. It is only when the advisory instructions are combined with other instructions indicating that violations of its provisions are punishable under separate penal statutes that the nonpunitive nature of the regulation is manifest.

For the reasons stated, we hold that the provisions of paragraph 4–46 of AFR 30–2 are punitive in nature and that violations of its provisions are properly chargeable under Article 92, Code, supra.

■ With respect to appellate defense counsel's second assignment of error, assuming that trial counsel did err in stating his opinion that the punishment should serve to deter others from committing similar offenses,[4] we perceive no possibility of prejudice to the accused under the circumstances of this case. The accused was sentenced by the military judge, and this officer is presumed, in the absence of a clear showing to the contrary, to have exercised the proper discretion in distinguishing between relevant and irrelevant argument. *United States v. Moore*, 1 M.J. 856 (A.F. C.M.R. 1976).

The findings of guilty and the sentence are

AFFIRMED.

FORAY, Judge, concurs.

EARLY, Judge, absent.

---

4. See *United States v. Mosely*, 1 M.J. 350 (1976), and *United States v. Miller*, 1 M.J. 357 (1976). But see *United States v. Davic*, 1 M.J. 865 (A.F.C.M.R.1976).