**UNITED STATES**

v.

**Dwayne C. JACKSON, Gunnery Sergeant (E–7), U.S. Marine Corps.**

**NMCCA 200400603.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 5 Dec. 2003.

Decided 31 Aug. 2005.

LCDR Thomas Belsky, JAGC, USNR, Appellate Defense Counsel.

Maj J. Ed Christiansen, USMC, Appellate Defense Counsel.

CAPT Thomas J. Demay, JAGC, USNR, Appellate Government Counsel.

Maj Raymond E. Beal II, USMC, Appellate Government Counsel.

Before DORMAN, Chief Judge, PRICE, Senior Judge, and MULROONEY, Appellate Military Judge.

DORMAN, Chief Judge:

The appellant was tried by a general court-martial before a military judge sitting alone. Consistent with his pleas, the appellant was convicted of four specifications of violating a lawful general regulation by fraternizing with four different female enlisted Marines who were junior to him in grade, and single specifications of indecent exposure and indecent assault. The appellant's crimes violated Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934. The adjudged and approved sentence includes a bad-conduct discharge, confinement for 9 months, and reduction to pay grade E–3. The convening authority deferred and waived the applicable automatic forfeiture of pay and allowances. This deferral and waiver, while ordered to comply with the terms of the appellant's pretrial agreement, was meaningless because the appellant was beyond his end of active service date as of the date he was sentenced.

The appellant has raised two assignments of error. He first asserts that his conviction for fraternization must be set aside because the inquiry into his guilty pleas fails to establish that he had a relationship with any of the four enlisted females who were junior in grade to him. He next alleges that his guilty pleas to these same offenses are improvident because U.S. Navy Regulations, Article 1165 (1990), hereinafter Article 1165, is not a punitive regulation.

We have reviewed the record of trial, the appellant's assignments of error, and the Government's response. Following that review, we find merit in the appellant's first assignment of error. We also conclude that the appellant's guilty plea to indecent assault is flawed. Following our corrective action, we conclude that the findings are correct in law and fact, and that no error remains that materially prejudices the appellant's substan-

tial rights. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Facts

In June 2003, the appellant decided to organize a fashion show at Camp Lejeune, NC, to raise money for the Marine Corps Ball. While doing so, he met several enlisted females who were junior to him in grade and whom he wanted to have participate in the show. The appellant gave these Marines a "profile" that they were to complete. The profile included an area in which the participants were to record their measurements. The appellant also invited the women to come to his barracks room to discuss the fashion show and to finish completing the profile. Lance Corporal (LCpl) R went to the appellant's room and he took some of her measurements. He also invited her back to watch movies and to spend time together outside of normal working hours. The record does not indicate whether the second female, LCpl W, ever went to his room, but it does reflect that the appellant did not take her measurements. The third female, Corporal (Cpl) S, did not go to the appellant's room and he did not take her measurements. The appellant asked the fourth female, Sergeant (Sgt) J, to come to his room. Sgt J went to the appellant's room on one occasion, at which time she dropped off the profile he gave her to fill out.

The planned fashion show never took place. While the appellant had intended to conduct one, he also hoped that his contacts with the four women would develop into sexual relationships with them. There is no evidence that any such relationships developed. Although none of these female Marines worked for the appellant, they all lived in the same barracks as he did. The appellant lived on the third deck and the four females lived on the second deck. The appellant was assigned to Headquarters Group, II Marine Expeditionary Force (MEF). The female Marines were all part of 2d Marine Aircraft Wing, a subordinate unit of II MEF.

The appellant was also convicted of an indecent assault committed against Cpl C on 14 April 2003, while they were deployed together in Kuwait. Specification 2 of Charge II alleges that the appellant assaulted her by touching her breast and by "masturbating his penis in front of her; with intent to gratify his sexual desires." The providence inquiry into that specification reveals that the appellant went into Cpl C's tent while looking for another individual. The appellant knew Cpl C, but he did not know she was staying in the tent he entered. Once inside the tent, he recognized her. The appellant tried to wake her and, in doing so, touched her breast. He then exposed his penis and masturbated in front of her.

## U.S. Navy Regulations, Article 1165 (1990)

Both of the appellant's assignments of error attack his conviction for violating U.S. Navy Regulations, Article 1165. That Article, entitled "Fraternization Prohibited," provides, in part, that:

> When prejudicial to good order and discipline or of a nature to bring discredit on the naval service, personal relationships between officer members or between enlisted members that are unduly familiar and that do not respect differences in grade or rank are prohibited. Prejudice to good order and discipline or discredit to the naval service may result from, but are not limited to, circumstances which—a. call into question a senior's objectivity; b. result in actual or apparent preferential treatment; c. undermine the authority of a senior; or d. compromise the chain of command.

The appellant's second assignment of error alleges that Article 1165 is not a punitive regulation. We address that argument first.

The appellant is correct that Article 1165, "does not address any consequences for a violation of its terms." Appellant's Brief of 30 Sep 2004 at 6. The appellant is also correct in his observation that this court has never addressed the issue of whether Article 1165 is a punitive regulation. In support of his argument that Article 1165 is not punitive, the appellant cites language contained in *United States v. Shavrnoch,* 49 M.J. 334, 336 (C.A.A.F.1998), that "if a regulation does not contain language establishing that it is a punitive regulation, a violation of the regulation is not a criminal offense under Article 92(1)[, UCMJ]." *Id.*

We do not read the broad language quoted from *Shavrnoch* as establishing a new standard for determining whether a regulation is punitive. Nor do we read it as overturning the long-standing case law that "[n]o single characteristic of a general order determines whether it applies punitively...." *United States v. Nardell*, 45 C.M.R. 101, 103, 1972 WL 14133 (C.M.A.1972); *see also United States v. Green*, 58 M.J. 855, 857 (Army Ct.Crim.App.2003), *rev. denied*, 59 M.J. 141 (C.A.A.F.2003). *Nardell* generally requires examination of the entire regulation to determine whether it is punitive in nature. The examination should focus on whether the regulation is intended to provide general guidance or "regulate conduct of individual members," and whether "its direct application of sanctions for its violation is self-evident." *Nardell*, 45 C.M.R. at 103; (citing *United States v. Hogsett*, 25 C.M.R. 185, 1958 WL 3110 (C.M.A.1958)); see also MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), App. 23, ¶ 16, at A23–5. Furthermore, "[i]f the order requires implementation by subordinate commanders to give it effect as a code of conduct, it will not qualify as a general order for the purpose of ... prosecution." *Nardell*, 45 C.M.R. at 103 (citing *United States v. Tassos*, 39 C.M.R. 12, 1968 WL 5043 (C.M.A.1968)).

Applying these standards, we hold that U.S. Navy Regulations, Article 1165, is a punitive regulation. First, U.S. Navy Regulations, Article 0103, provides that the United States Navy Regulations are "endowed with the sanction of law." That Article thus provides notice that violation of the prohibitions contained within the Regulations can result in disciplinary proceedings. Second, the language of the Article 1165 is clearly intended to regulate conduct of individual Sailors and Marines, and clearly does not need further implementation. Finally, language contained in the Article such as, "Fraternization Prohibited" and "relationships ... between enlisted members ... are prohibited" is directive in nature and is "designed to [e]nsure compliance" with the regulation. *See United States v. Blanchard*, 19 M.J. 196, 198 (C.M.A. 1985). Such directive language makes the punitive nature of this regulation self-evident.

## Providence of Pleas to Fraternization

The standards of review to determine whether a guilty plea has been providently entered are well known. A military judge may not accept a guilty plea to an offense without inquiring into its factual basis. Art 45(a), UCMJ, 10 U.S.C. § 845(a); *United States v. Care*, 40 C.M.R. 247, 253–54, 1969 WL 6059 (C.M.A.1969). Before accepting a guilty plea, the military judge must ordinarily explain the elements of the offense and ensure that a factual basis for the plea exists. *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F.2002); *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F.1996); *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980); RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), Discussion. Acceptance of a guilty plea requires an accused to substantiate the facts that objectively support the guilty plea. *United States v. Schwabauer*, 37 M.J. 338, 341 (C.M.A.1993); R.C.M. 910(e), Discussion. Mere conclusions of law recited by the accused, however, are insufficient to establish a factual basis for a guilty plea. *United States v. Terry*, 45 C.M.R. 216, 217, 1972 WL 14158 (C.M.A.1972).

The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law and fact for questioning the plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). Such questioning must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty, and the only exception to the general rule of waiver arises when an error prejudicial to the substantial rights of the appellant occurs. Art. 59(a), UCMJ; R.C.M. 910(j).

In the case before us, the appellant was convicted of four specifications of fraternization. Each specification alleges that the fraternization was committed by **asking** a female Marine, junior to the appellant, to take her measurements, to come to his quarters, and/or to spend time with him outside normal working hours. During the providence inquiry, the appellant admitted to that conduct. He also admitted that one of the

Marines came to his quarters and he took her measurements, and that another came to his quarters to drop off the fashion show profile form he had given her to fill out. Significantly, he also admitted that he had hoped that his initial contact with these four junior Marines would lead to sexual relationships.

The appellant argues that his pleas are not provident because the record does not establish that he had a relationship with any one of the four junior Marines. His argument merits discussion. First, it is important to recall that the providence inquiry must establish a factual basis for all the elements of an offense to which the appellant pleads guilty. In this case, the record must establish three elements: that Article 1165 was a lawful general regulation; that the appellant had a duty to obey it; and that he failed to do so. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), Part IV, ¶ 16b(1). Here, the record clearly establishes a factual basis for the existence of the regulation and the appellant's duty to obey it. However, to determine whether the regulation has been violated, it is necessary to determine what the regulation prohibits.

With respect to the appellant, the regulation prohibits certain types of relationships. Included are those relationships that are unduly familiar and do not respect differences in grade or rank. Furthermore, the relationships must also be prejudicial to good order and discipline or of a nature to bring discredit upon the naval service. The regulation specifically lists four examples of how the circumstances of a relationship could be prejudicial to good order and discipline or could bring discredit upon the naval service. Those circumstances include relationships that call into question a senior's objectivity; result in actual or apparent preferential treatment; undermine the authority of a senior; or compromise the chain of command. Were the appellant to have pled not guilty, the Government would have been required to prove the elements of the charged offense, to include the fact that the appellant engaged in a relationship of the type herein described. Thus, just as the existence of a general regulation prohibiting fraternization is a factual predicate to acceptance of a guilty plea to an alleged violation of Article 92(1), UCMJ, 10 U.S.C. § 892(1), the plea inquiry must also establish a factual basis for the existence of a relationship.

The Government argues that we should reject the appellant's argument that the record fails to establish that he had a sufficient relationship with any of the junior Marines to constitute fraternization. The Government argues that "[t]here is no requirement in Article 1165 that the requisite personal relationship extend for a certain period of time. Instead, the Regulation proscribes unduly familiar conduct that undermines good order and discipline." Government's Answer of 3 Mar 2005 at 5. We point out to the Government that Article 1165 proscribes relationships, not conduct, that result in prejudice to good order and discipline or in discredit to the naval service. "General orders, like penal statutes, are to be strictly construed . . . and when doubt exists respecting an order's meaning or applicability, the doubt should be resolved in favor of the accused." *United States v. Hode*, 44 M.J. 816, 817 (A.F.Ct. Crim.App.1996) (citations omitted). Furthermore, "[a]ny ambiguity in construing a punitive regulation should be resolved in appellant's favor." *United States v. Hughes*, 48 M.J. 214, 217 (C.A.A.F.1998)(citing *United States v. Williams*, 29 M.J. 112, 115 (C.M.A. 1989)).

Based upon our examination of the record, we conclude that the appellant's guilty pleas to fraternization are not provident. We hold that the providence inquiry does not establish that the appellant entered into the type of relationship prohibited by Article 1165 simply by *asking* junior Marines the questions he admittedly asked. We need not resolve the question of what constitutes a "relationship." We need only conclude that the providence inquiry in this case did not establish the existence of a prohibited relationship with any of the four junior Marines.[1]

---

1. This case is distinguishable from *United States v. Humpherys*, 57 M.J. 83 (C.A.A.F.2002). While that case upheld Humpherys' conviction for violating a general regulation by making a comment to a female trainee, the regulation itself prohibited "attempting to or soliciting a trainee to en-

### Indecent Assault

The appellant also was convicted of indecently assaulting another female Marine by "touching her right breast; ... [and] masturbating his penis in front of her; with intent to gratify his sexual desires." Specification 2 of Charge II. Although not raised as an error, we conclude that the appellant's guilty plea to assault by masturbating in front of his victim is not provident. The record fails to establish either a legal or factual basis to support a conviction for assault under those facts. We note that the appellant was convicted for indecent exposure based on that same incident. At trial, the military judge determined that the two specifications under Charge II were multiplicious for sentencing purposes.

### Conclusion

The appellant's conviction of Charge I, alleging a violation of Article 92, UCMJ, and its four specifications is set aside. That Charge and its specifications are ordered dismissed. The remaining findings are affirmed, excepting the language, "(3) masturbating his penis in front of her;" in Specification 2 of Charge II. That excepted language is set aside and ordered dismissed.

As a result of our action on the findings, we must either reassess the sen-

---

tence in accordance with the principles of *United States v. Cook,* 48 M.J. 434 (C.A.A.F. 1998), *United States v. Peoples,* 29 M.J. 426, 428 (C.M.A.1990), and *United States v. Sales,* 22 M.J. 305, 307–08 (C.M.A.1986), or return the record to the convening authority. Due to the significant modification in the findings, the appellant's lengthy and commendable military record, and the recommendation of the military judge that the convening authority consider suspending the punitive discharge, we will not reassess the sentence.

The record of trial is returned to the Judge Advocate General for forwarding to an appropriate convening authority. That convening authority may either order a sentencing rehearing or approve a sentence of no punishment. Upon completion of action deemed appropriate by the convening authority, the case will be returned to this court for completion of appellate review.

Senior Judge PRICE and Judge MULROONEY concur.

---

gage in nonprofessional behavior." *Id.* at 93. The regulation also provided specific examples of

unprofessional conduct.