UNITED STATES of America

v.

Matthew W. SIMMONS, Sergeant
(E–5), U.S. Marine Corps.

NMCCA 201100044.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged: 21 Oct. 2010.

28 Feb. 2012.

For Appellant: Capt. Diane L. Karr, JAGC, USN.

For Appellee: Col. Kurt J. Brubaker, USMC; Capt. Paul Ervasti, USMC; Capt. Robert E. Eckert, Jr., USMC; Brian K. Keller, Esq.

PERLAK, S.J., delivered the opinion of the court in which REISMEIER, C.J., MAKSYM, S.J., WARD, J., and MODZELEWSKI, J., concur. PAYTON–O'BRIEN, J., filed an opinion dissenting in part and concurring in part, joined by CARBERRY, S.J., and BEAL, J.

## PUBLISHED OPINION OF THE COURT

PERLAK, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas and with various exceptions and substitutions, of two offenses involving violation of general regulations (specifically, a Department of Defense (DoD) instruction on uniforms and the Department of Defense Joint Ethics Regulation ["JER"]) and one offense involving the General Article, respectively violations of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934. The military judge sentenced the appellant to forfeit all pay and allowances, to a fine of $10,000.00 with an additional nine months of confinement if not paid within three months, reduction to pay grade E–1, confinement for 90 days, and a dishonorable discharge. The convening authority approved only so much of the sentence as extended to confinement for 90 days, a fine of $10,000.00, and a bad-conduct discharge. An enclosure to the recommendation of the staff judge advocate indicates a timely satisfaction of the fine approximately three weeks after trial.

The appellant raised a single assignment of error, averring that the specification under Article 134 failed to state an offense for want of the terminal element. The panel of this court which originally reviewed this appeal specified four additional issues: 1) whether one of the regulations that the appellant violated was issued by competent authority; 2) whether the same regulation was punitive; 3) whether the appellant was operating in an official capacity when violating the other general regulation; and 4) whether the military judge correctly calculated the maximum punishment.

In a decision issued on 27 September 2011, *United States v. Simmons*, No. 201100044, 2011 WL 4553092, 2011 CCA LEXIS 164, unpublished op. (N.M.Ct.Crim.App. 27 Sep. 2011), the panel set aside the guilty findings on Specifications 1 and 3 of Charge I, distinguished the original assigned error from the holding in *United States v. Fosler*, 70 M.J. 225 (C.A.A.F.2011), and affirmed the findings as to the Article 134 offense. With a drastically reduced sentencing calculus than was discussed at trial, the panel set the sentence aside and authorized a rehearing on sentence, confining the scope of the rehearing to the Article 134 offense only, and limiting the scope of the available sentence to remove from consideration any punitive discharge or monetary penalty greater than 2/3 pay per month for 4 months.[1]

On 26 October 2011, the United States moved for *en banc* reconsideration, which was granted on 3 November 2011. Given that the appellant was no longer in confinement and his detailed appellate defense counsel is a Reserve officer residing on the west coast, the parties requested, and the court ordered, oral argument for 11 January 2012. Following *en banc* reconsideration, the court hereby vacates the panel decision of 27 September 2011. Concluding that following our corrective action no error materially prejudicial to the substantial rights of the appellant remains, we affirm the findings as modified herein and the sentence as approved by the convening authority. Arts. 59(a) and 66(c), UCMJ.

### Background

The appellant was a Sergeant of Marines assigned to "the Commandant's Own," the United States Marine Drum and Bugle

---

1. To the extent that the panel's original decision may have determined that the appellant's pleas to the Article 92 offenses were improvident, it was legally incorrect in the decretal paragraph to dismiss these offenses without providing for a rehearing on the merits.

Corps, whose primary duties involved music and ceremonies. In his off-duty time, he appeared in several overtly military-themed, commercial pornographic videos, involving sodomy with numerous other men, receiving $10,000.00 for his performances. The promotional still photos variously include the appellant wearing his Marine dress blue tunic bearing his actual decorations, and his dress cover, both of which items bore the Marine Corps emblem. Other images depict the appellant wearing the current-issue Marine Corps physical training jacket. The appellant held himself out as a Marine to the video producers before and during the filming. His activities came to the command's attention after a former Marine in the Drum and Bugle Corps learned of the videos and reported the situation. The state of the pleas entered and evidence received narrowly focus us upon the violation of regulations, commercial exploitation of the various indicia of the Marine Corps, and service discrediting conduct.

## Discussion

After negotiating a favorable pretrial agreement, in which he avoided prosecution for committing various sexual offenses, and entering into a pretrial stipulation of fact with the Government, the appellant unconditionally pleaded guilty to the charges before us. During the providence inquiry, he adequately described to the military judge how his conduct violated both the uniform instruction and JER, specifically acknowledging that he purposefully wore the uniform during his performances to represent that he was a Marine and that doing so may imply the Marine Corps officially endorsed the commercial enterprise. On appeal, the appellant now claims that the military judge should not have accepted his factual explanations or his guilty pleas and that we should set aside his convictions for violating the regulations. The issues specified by the panel were reflective of their concerns regarding both the legal and the factual basis for several of the pleas. Upon reconsideration, the court *en banc* holds that there is no substantial basis in law or fact to question the appellant's guilty pleas to violating the general regulation offenses. However, concluding that there was an unreasonable multiplication of charges in this case, we set aside the findings of guilty of the general article conviction, merge Specification 3 with Specification 1 of Charge I, affirm Charge I and the merged specification, and after reassessing the sentence affirm the approved sentence.

## Punitive General Regulation

█] We resolve the first two specified issues consistent with the panel decision and hold that Department of Defense Instruction 1334.01 of 26 October 2005, appended to the record as Appellate Exhibit VII, issued by the Under Secretary of Defense for Personnel and Readiness, was a lawful general regulation which was punitive in nature.

Pursuant to the MANUAL FOR COURTS–MARTIAL, UNITED STATES (2008 ed.), Part IV, ¶ 16c(1)(a), a lawful general regulation may only be issued by, "the President or the Secretary of Defense, of Homeland Security, or of a military department, [or by various uniformed officials]." Acting pursuant to statutory authority, section 113 of title 10, United States Code, the Secretary of Defense has delegated his authority in the areas of readiness and training to the Under Secretary for Personnel and Readiness. While the current Departmental directive was not in effect when the Under Secretary issued the Instruction on wearing the uniform, its provisions are consistent with those that governed at the time. We are satisfied that the Under Secretary was vested with sufficient statutory and regulatory authority to issue, in his own right, this regulation. *Cf. United States v. Bartell,* 32 M.J. 295, 296–97 (C.M.A.1991) (distinguishing between decisional authority, that is the exercise of discretion, and signature authority, a ministerial aspect, when determining lawfulness of orders and regulations).

We are likewise satisfied that the regulation is punitive; that is, it was published with a view toward governing conduct of service members, rather than simply stating guidelines for performing military functions. *See United States v. Nardell,* 45 C.M.R. 101, 103, 1972 WL 14133 (C.M.A.1972). We reach this conclusion, in part, because of the similarity to other regulations—the prohibition against wearing the uniform to endorse commercial

entities, for example, is similar to the prohibitions found in the JER—and to punitive provisions of United States law. *Compare* 10 U.S.C. Chapter 45 *with* 18 U.S.C. § 702 (providing for imprisonment for unauthorized uniform wear) *and* MCM, Part IV, ¶ 113 (wearing unauthorized uniform devices).

### Endorsement, Official Capacity, and Factual Sufficiency

We review a military judge's decision to accept a guilty plea for an abuse of discretion and review questions of law arising from a guilty plea *de novo*. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996). In order to reject a guilty plea on appellate review, the record must show a substantial basis in law or fact for questioning the plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F.2008); *United States v. Irvin*, 60 M.J. 23, 24 (C.A.A.F.2004) (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)). A military judge may not accept a guilty plea if it is "irregular," the accused "sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect...." Art. 45(a), UCMJ. However, we "will not overturn a military judge's acceptance of a guilty plea based on a 'mere possibility' of a defense.... Nor will we 'speculate post-trial as to the existence of facts which might invalidate an appellant's guilty pleas.'" *United States v. Ferguson*, 68 M.J. 431, 434 (C.A.A.F.2010) (citations and internal quotation marks omitted).

█] We find that the providence inquiry (Record at 34–78) and Prosecution Exhibit 1, a stipulation of fact entered into nearly two months before trial, amply demonstrate that all elements of these offenses were met. We find that the appellant providently entered his guilty pleas, understood their meaning and effect, and we find no "irregularities" or "inconsistencies" in his pleas.

During the providence inquiry, the military judge fully advised the appellant of the elements of the offenses and the effects of his guilty pleas. Provided with all appropriate definitions needed to inform his answers, the appellant was placed under oath and admitted to holding himself out to a commercial enterprise as a United States Marine and of using readily identifiable uniform items of the Marine Corps in the context of filming and promoting commercial pornography for his own financial gain, in violation of the lawful general regulations charged. We reject the panel's conclusion that there is a basis to legally distinguish or nuance the identifiable, constituent parts of the uniforms of the Marine Corps from the uniform in its entirety,[2] worn in a strictly regulation manner. Based on the entirety of the record in this case, including the appellant's own words during the providence inquiry, the stipulation of fact, PE 1, and the various exemplars found in PE 2, we find no basis in law to hold that the appellant's wearing of the uniform was anything but the very conduct intended to be proscribed by the general regulations he pleaded guilty to violating.

While there is necessarily a leading quality to the military judge's inquiry conducted pursuant to *United States v. Care*, 40 C.M.R. 247, 1969 WL 6059 (C.M.A.1969), this case includes the appellant's own informed assessment and conclusion that his appropriations of the Marine Corps uniform stood to imply a Marine Corps endorsement and permission. The following colloquies between the military judge and the appellant are relevant:

MJ: Okay. Tell me how you failed to obey it or how you disobeyed it.

ACC: Sir, I wore the jacket and the uniform in a private entity that implied endorsement by the Marine Corps.

Record at 49.

MJ: And wearing that uniform, could someone draw the inference that the Marine Corps was somehow sponsoring

---

2. Assuming that a distinction can be drawn between a uniform and components thereof, and assuming that at times during his commercial venture the appellant wore only components of his uniform, the appellant's broad admissions in the record included the appellant's unqualified admissions: "I wore the jacket and the uniform in a private entity that implied endorsement by the Marine Corps"; "I had everything on in the full dress blues but it was unbuttoned"; and "Yes, sir" to the judge's question of whether "that was a complete uniform, except for the aglet [sic] from your specific unit." (Record at 49, 52, and 69 respectively).

either the activity, the photograph, or the website?

ACC: Yes, sir.

MJ: All right. Why do you say that?

ACC: Because the uniform is distinctive, mainly because of the Eagle, Globe and Anchor emblems on the collar. So someone would naturally assume that it was the Marine Corps giving me permission to do this, since I was wearing the uniform.

*Id.* at 53.

MJ: Do you believe that your conduct on these occasions; that is, wearing your U.S. Marine Corps uniform in the production of these videos and photographs would lead someone to believe that the U.S. Marine Corps, the Department of Defense, or the U.S. government was officially sanctioning or sponsoring these videos or photographs?

ACC: Yes, sir.

*Id.* at 55.

Moreover, the appellant acknowledged that his intent in wearing the uniform during his recorded performances was to demonstrate that he was a Marine.

MJ: Okay. But you were wearing it, trying to demonstrate you were a Marine, at the time?

ACC: Yes, sir.

MJ: I mean, your purpose behind that was to identify yourself as being a Marine. Would that be accurate or inaccurate?

ACC: Accurate, sir.

*Id.* at 62–63.

The DoD uniform instruction, borrowing language from the regulation, clearly prohibits use of the uniform in the context of private employment "when an inference of official sponsorship may be drawn." The appellant has more than met this standard in his acknowledgements under oath, as detailed above, and in the context of the entire record before us. We are similarly satisfied that the appellant met the standard required under the specification alleging the JER violation. There the appellant needed only to demonstrate that in his official capacity he endorsed, or implied endorsement, for the pornographic website by wearing a military uniform while posing in pornographic photographs on the website. We find that he has done so.

The appellant, identifiable among the various participants in this pornographic enterprise because he was wearing the uniform, did so in a commercial endeavor for private gain. While the nature of the appellant's off-duty actions are far removed from any official purpose ascribable to the Marine Corps, he admitted under oath that he had misused the uniform commercially and lent a service endorsement through his use of the uniform for private gain. PE 2 contains photocopies of video covers that claim the films to be "An Active Duty Production," while the web address of the site itself indicates that active duty members of the military are involved. The very essence of this pornography, styled, branded, titled, and marketed with a military theme, took on a distinct Marine Corps flavor and, on the facts before us, a prohibited service endorsement by the appellant at the institutional expense of the Marine Corps. The record before us is unrebutted; in a guilty plea case, the appellant violated, and believed he had violated, the applicable general regulations.

Turning to the role of the military judge, as often attributed to *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F.2000), he or she is presumed to know and apply the law. There is nothing in the record before us to challenge that presumption. While the military judge could have attempted to elicit more robust answers from the appellant, we cannot conclude that the military judge abused his discretion in accepting these pleas. The appellant pleaded guilty, admitted that he wore his uniform with the purpose of implying that the depictions were officially sanctioned, and admitted that viewers might reach that very conclusion. Whether, had he instead chosen to contest the Government's theory of the case, he would have prevailed with a different interpretation of the facts is no longer an issue. *See Ferguson*, 68 M.J. at 435. Upon *de novo* review, we find no erroneous resolution of a question of law by the military judge or resultant prejudice to the appellant as to the

Article 92 offenses. Finally, we find no matters of record that raise either irregularity or inconsistency in the appellant's pleas. *See* Art. 45(a), UCMJ. We decline to disturb these findings or grant relief based on matters raised in the third specified issue.

## Unreasonable Multiplication of Charges

Prior to entering pleas, the appellant brought a motion challenging the form of the charges as they related to sentencing, averred that they alleged the same underlying conduct, and requested that the military judge find Specification 3 of Charge I and the Additional Charge and it sole specification "multiplicious with Charge I, Specification 1, for sentencing purposes." AE I at 4. The military judge rejected the legal basis for the motion and ultimately denied the motion as untimely under the circuit's rules. Assuming without deciding that the judge abused his discretion, we find no prejudice remains after our own resolution of this issue. The form of the charges changed midstream to substantially comport the conduct and timeline in the Additional Charge with the conduct and dates of the Article 92 offenses. Record at 43. Based on the final state of the charges, following the exceptions and substitutions agreed to during the providence inquiry, we agree with the appellant that the charges allege essentially the same conduct.

■ We hold that the Additional Charge and its sole specification, following those exceptions and substitutions, constitute an unreasonable multiplication of charges. *See United States v. Quiroz*, 57 M.J. 583, 585–86 (N.M.Ct.Crim.App.2002) (*en banc*), *aff'd*, 58 M.J. 183 (C.A.A.F.2003) (summary disposition). First, the appellant objected at trial, albeit relying upon a legally imprecise basis, asserting that the same conduct was alleged in multiple charges. Second, these charges in their final form address the same criminal acts. The specifications under Charge I generally allege that the appellant violated two separate orders by wearing the U.S. Marine Corps uniform and misusing his public office during his private employment in the commercial sale and marketing of pornographic photographs and videos, commercially bene-

fitting himself and a nonfederal entity. The same body of conduct is alleged in the Additional Charge, with limited variation or amplification, along with the commercial nexus. Third, by charging the appellant an additional time for the same conduct, the state of the charges before us exaggerates the extent of the appellant's criminality. Fourth, the additional charge inappropriately exposed the appellant to an additional finding of guilty as well as additional exposure on sentence. As to the final *Quiroz* factor, however, we find no evidence of prosecutorial overreaching. Accordingly, we conclude that the Additional Charge and its sole specification constitute an unreasonable multiplication of charges and we set aside those findings of guilty.[3]

■ Our analysis does not end there. Applying these same factors to the remaining Article 92 offenses, we hold that Specifications 1 and 3, as pled in this case, likewise constitute an unreasonable multiplication of charges. While it is entirely possible for an accused to separately violate the uniform regulation and violate the JER, the conduct as charged in this case, focused on the uniform and its commercial misuse, constitutes a single offense. Specifications 1 and 3 are hereby merged into a single remaining Specification 1 under Charge I.

## Conclusion

The findings of guilty to the Additional Charge and its sole specification are set aside. Specification 3 under Charge I is merged into Specification 1. The findings as to the merged specification and Charge I are affirmed. Our action does not dramatically change the appellant's sentencing landscape and we are able to reassess. *See United States v. Buber*, 62 M.J. 476, 478–79 (C.A.A.F.2006); *and United States v. Doss*, 57 M.J. 182, 185 (C.A.A.F.2002). With the same corpus of conduct now properly captured in a single specification, we are confident that the minimum sentence the military judge would have awarded for what remains would have included confinement for 90 days, a fine of $10,000.00, and a bad-conduct discharge. *See United States v. Cook*, 48 M.J.

3. Such action renders moot the appellant's sole assigned error.

434, 438 (C.A.A.F.1998), *United States v. Peoples,* 29 M.J. 426, 428–29 (C.M.A.1990), and *United States v. Sales,* 22 M.J. 305, 307–08 (C.M.A.1986). We affirm the sentence as approved by the convening authority.

Chief Judge REISMEIER, Senior Judge MAKSYM, Judge WARD, and Judge MODZELEWSKI concur.

PAYTON–O'BRIEN, Judge, joined by CARBERRY, S.J., and BEAL, J., (dissenting in part and concurring in part):

I dissent from the majority opinion as to their resolution of the findings of guilty. However, I concur in affirming the sentence as approved by the convening authority.

As noted in the Panel's opinion of 27 September 2011, Specification 1 of Charge I, charges the appellant with wearing his military uniform "when an inference of official sponsorship may be drawn...." The text of the DoD Instruction 1334.01 [1] at issue states:

> 3.1.2 During or in connection with furthering political activities, private employment or commercial interests, when an inference of official sponsorship for the activity or interest *may be shown.*

(Emphasis added).

Notwithstanding the appellant's statement to the military judge that "someone" would believe the Government was officially sanctioning or sponsoring his activity, I am convinced that no reasonable member of the public could infer that the Government was an official sponsor of his activity.[2] Record at 53, 55.

First, the appellant's behavior was criminal in nature (sodomy with one or more males, in the presences of others, an indecent act under the Uniform Code of Military Justice). I do not believe that a reasonable person could infer that the Government was officially sponsoring conduct that violated the UCMJ.

Second, the sexually explicit activity depicted in the videos and photographs and the titles of those videos are so far removed from the official activities of the United States Government, the DoD, and specifically, the Marine Corps, that no reasonable person could infer that the Government was officially sponsoring the appellant's activity or the videos. Furthermore, the Government's sentencing document, Prosecution Exhibit 2, indicates that the ".com" web site is not a Government or military sponsored website. This too militates against an inference of official Government sponsorship.

While I have no doubt that the appellant desired to plead guilty to an orders violation rather than a sex offense, it is incumbent upon the military judge to ensure that there is a legal and factual predicate for the offense. In this instance, the military judge failed to conduct an adequate providence inquiry. When questioned by the military judge as to how someone could draw an inference that the Marine Corps was sponsoring his activity, the appellant replied that "someone would naturally assume that it was the Marine Corps giving me permission to do this, since I was wearing the uniform .... depending on how they would see it[,]" and thereafter agreed that "someone" would believe the Government was officially sanctioning or sponsoring his activity. Record at 53, 55. Despite these assertions that "someone" might infer official Government sponsorship, when applying a reasonableness standard, I do not find that a reasonable person would infer official Government sponsorship of the appellant's homosexual pornographic videos or this pornographic web site. Indeed, even the appellant's later statement to the military judge regarding his conduct, i.e., "... it's not an image that people portray Marines doing, the negative sexual activity" is inconsistent with an inference of Government sponsorship and the appellant's statement that the Ma-

---

1. I note that the specification indicates the appellant violated DOD Directive 1334.01, when the regulation at issue is actually Department of Defense Instruction 1334.01.

2. Although the DoD Instruction at issue does not set forth a reasonableness standard, I cannot discern that any lesser standard should apply to this DoD uniform instruction. In comparison, the Code of Federal Regulations, 5 C.F.R. § 2635.702, governing the use of public office for private gain, in fact, sets forth a reasonableness standard ("could reasonably be construed to imply ... Government [sanction] or endorse[ment]"). Therefore, I apply a reasonableness standard to the DoD instruction at issue.

rine Corps gave him permission to wear the uniform in the video. *Id.* at 77. Despite the contradiction of these statements, however, the military judge accepted the appellant's guilty plea.

Since there is a substantial basis in both law and fact for questioning the plea, the finding of guilty of Specification 1 of Charge I should be set aside. *United States v. Inabinette,* 66 M.J. 320, 322 (C.A.A.F.2008).

As to Specification 3 of Charge I, the specification charged the appellant with violating the section 3–209 of the Joint Ethics Regulation "by wrongfully using his *official capacity as a U.S. Marine,* to wit: wearing a military uniform while posing in pornographic photographs...."

Section 3–209 states that endorsement of a non-Federal entity, event, product, service or enterprise may be neither stated nor implied by DoD or DoD employees in their *official capacities and titles, positions, or organization names* may not be used to suggest official endorsement or preferential treatment of any non-Federal entity.

The gravamen of the offense is the use of one's official capacity, title, position and organizational name and not the wearing of the uniform. The military judge's inquiry with the appellant, however, focused on the wrongful wearing of the Marine Corps physical training jacket in the video and never explored with the appellant whether he was acting in his official capacity or wrongfully used his title, position, or organizational name to imply endorsement of the video.

Although the appellant was authorized to wear the PT jacket as liberty attire and he admitted that his purpose in wearing the jacket in the video was to demonstrate that he was a Marine, there is no inquiry regarding the misuse of his official capacity, position, title and organization and no discussion regarding him making any reference in the video to being a sergeant on active duty in the Marine Corps or that he is a member of the Drum and Bugle Corps. Record at 57–71. I find that the appellant's actions, i.e., appearing in pornographic videos for compensation while wearing a Marine Corps PT uniform jacket, do not amount to a misuse of his title, official capacity, organization, or position.

Since there is a substantial basis in both law and fact for questioning the plea, the finding of guilty of this specification should be set aside. *Inabinette,* 66 M.J. at 322

Additionally, I would find both Specifications 1 and 3 of Charge I constitute an unreasonable multiplication of charges with the sole specification under the Additional Charge. I would set aside the findings of guilty as to Specifications 1 and 3 under Charge I. When faced with an unreasonable multiplication of charges, one common judicial remedy is to merge the lesser offenses with the greater offense (or to dismiss the lesser offenses outright). While this may be common practice, I know of no requirement to adhere to this approach. Dismissal of unreasonably multiplied charges is an authorized judicial remedy at trial. *United States v. Roderick,* 62 M.J. 425, 433 (C.A.A.F. 2006). Which charges *should* be dismissed is a question ultimately resolved as a matter of judicial discretion. *See* RULE FOR COURT–MARTIAL 907(b)(3), MANUAL FOR COURTS–MARTIAL, UNITED STATES (2008 ed.), Discussion. In this case the inadequacy of the inquiry and threadbare factual predicate for Charge I, Specifications 1 and 3, serve as the legal bases for us to disapprove the findings to the greater of these unreasonably multiplied charges and approve only the findings to the additional charge and its sole specification. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Nerad,* 69 M.J. 138, 146 (C.A.A.F. 2010).

While I do not condone the appellant's actions, and certainly the Government could have found easier, less creative ways to charge the appellant, such as a simple Marine Corps uniform regulation violation, the manner in which the appellant was charged in this case creates issues that could have been avoided by the Government and the court below. Trial judges have a greater role than just repeating questions from a providence guide, and while the majority does not take issue with this particular record as it pertains to this judge's inquiry, it was clear from the outset of this trial that

this military judge did not create a trial environment whereby challenges to his authority by the defense would be well-received by him.[3]

As to the sentence, I find the appellant's misconduct in this case most analogous to a violation of Marine Corps Order P1020.34G, Chapter 1, Paragraph 1003(d), of 31 March 2003, under Article 92, UCMJ, for "appearing or participating in any event in public that would compromise the dignity of the uniform." *See* R.C.M. 1003(c)(1)(B). As such, the maximum punishment for such a general order violation is two years confinement, reduction to pay grade E–1, total forfeitures and a dishonorable discharge. The sentencing landscape would not change with this action and the court could reassess. *United States v. Buber,* 62 M.J. 476, 478–79 (C.A.A.F.2006); *United States v. Doss,* 57 M.J. 182, 185 (C.A.A.F.2002). I agree with the majority that the minimum sentence the military judge would have awarded for what remains would have included confinement for 90 days, a fine of $10,000 and a bad-conduct discharge.

I would affirm only the finding of guilty to the Additional Charge and specification thereunder, and affirm the sentence as approved by the convening authority.

---

**3.** In a pretrial motion for multiplicity and unreasonable multiplication of charges brought by the defense counsel, the military judge, who determined that the motion was untimely because it was filed outside the local court rule due dates, berated defense counsel in the presence of the appellant, and denied him an opportunity to be heard.