UNITED STATES, Appellee

v.

Richard A. PEREZ, Airman First Class
U.S. Air Force, Appellant.

No. 93–1001.
CMR No. 29140.

U.S. Court of Military Appeals.

Argued April 21, 1994.

Decided Sept. 19, 1994.

For Appellant: *Captain Richard D. Desmond* (argued); *Colonel Jay L. Cohen* and *Captain Robert A. Parks* (on brief); *Colonel Terry J. Woodhouse.*

For Appellee: *Major John H. Kongable* (argued); *Colonel Jeffery T. Infelise* (on brief); *Lieutenant Colonel Thomas E. Schlegel.*

## Opinion of the Court

GIERKE, Judge:

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of conspiracy to commit larceny and larceny, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 USC §§ 881 and 921, respectively. The approved sentence provides for a bad-conduct discharge, confinement for 8 months, total forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence. 36 MJ 583. We granted review of the following issues:

### I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING THE TRIAL DEFENSE REQUEST FOR AN INSTRUCTION TO THE MEMBERS DIRECTING A FINDING OF NOT GUILTY TO THE SPECIFICATION OF CHARGE I AND CHARGE I, BASED UPON THE MEMBERS' UNANIMOUS FINDING THAT APPELLANT HAD NOT COMMITTED THE CHARGED OVERT ACT.

### II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY PERMITTING AN OSI AGENT TO TESTIFY AS TO HIS INTERPRETATION OF WHAT ACTIVITY WAS REFLECTED IN A VIDEO TAPE.

## Factual Background

Appellant was a security policeman working off-duty as an exchange detective in the base exchange at Andrews Air Force Base, Maryland. Appellant was charged with larceny from the exchange and conspiracy to steal merchandise from the exchange. The overt act charged in connection with the conspiracy was that appellant turned off the surveillance cameras in the base exchange. The prosecution theory was that appellant turned off the cameras so that his partner, Airman Carter, could steal merchandise from the base exchange without being detected.

The Government's evidence regarding the overt act consisted of a composite videotape and several witnesses. The videotape portrayed what could be seen through the surveillance cameras operated by various exchange detectives, including appellant.

Special Agent (SA) Holland testified that appellant and Airman Carter worked together as store detectives. The Office of Special Investigations (OSI) was called in to monitor the exchange detectives because the exchange suspected that they were stealing merchandise from the exchange. Among the measures employed by the OSI was installation of a hidden camera in the exchange detectives' room. Over defense objection, SA Holland testified:

> On numerous occasions, [appellant] would put what we call the cameras in the down position. They are on a 360 rotation and what I would see is the cameras would go down to the rest position and then the irises on the camera would be closed. They wouldn't be turned off, but they would be closed out to where it wasn't viewing anything.

On cross-examination, SA Holland admitted that in order for appellant to turn off the surveillance cameras, he would have to go to the control console, where he could not be seen by the OSI's hidden camera.

SA Lee also testified regarding the OSI monitoring operation. SA Lee testified that on May 14, 1990, appellant and Airman Carter were on duty as exchange detectives. At about 9:30 p.m., while appellant was in the store detectives' security office, "the cameras were being shut down, they were turned to

the ground and they were being shut off." At the same time Airman Carter "was stuffing his pants full of clothes—a shirt—I don't know what other items he had stuffed in there...."

Airman Carter also testified regarding the modus operandi for stealing from the exchange. He testified that "when one individual was on the floor concealing merchandise, the cameras would be shut down so our actions couldn't be recorded on the camera...."

After the case was submitted on its merits to the court members, the members indicated that they had reached a verdict. When the military judge asked to examine the findings worksheet before the findings were announced, the president informed him that the members had unanimously agreed to except the words from the specification alleging that appellant "in order to effect the object of the conspiracy ... turned off the surveillance cameras in the base exchange." The president explained that the court members were unanimous in believing that the overt act had not been proved beyond a reasonable doubt. The findings worksheet and the marked up copy of the charges and specifications indicated that the members initially voted to convict appellant of conspiracy, but had excepted the language describing the alleged overt act.

The military judge convened a session under Article 39(a), UCMJ, 10 USC § 839(a), at defense request to discuss courses of action. Defense counsel argued that the finding of the court members that the overt act had not been proved was "the end of the inquiry because they had to be convinced beyond a reasonable doubt of each component—element of the offense." Defense counsel asked that the military judge enter a finding of not guilty if the members were hesitant to do so. Initially the military judge agreed to instruct the court members that they were required to enter a finding of not guilty. After further discussion with counsel, the military judge asked defense counsel, "Could you explain to me how I have the authority to make findings for the jury?" Receiving no response, the military judge continued:

MJ: I don't see how I can do it.... I don't see how I can direct the jury to read findings. What we have is an inconsistent finding—it hasn't been announced, so we've got inconsistent findings. There's been no findings announced. What I am more comfortable with doing is instructing the court members that they have reached an illegal conclusion.... They can't do it.... I am going to send them back in for reconsideration—that they have to go into reconsideration and start over, and that's the way I am going to handle it. And I will allow you to make any other arguments or put anything else on the record, objections or anything else, whatever you want to do. And the confusion is mine. But I don't see how I can enter a finding for them. And I still think we're all right because no findings have been announced by the court president at all.

DC: If you're going to instruct him that—

MJ: Here's what I intend to do. I intend to tell them that they have reached an impermissible—there's an impermissible—inconsistency—there's an inconsistency between their findings and the specifications as they have found it to be, that it just can't exist what they want to have happen. If indeed they believe that the government has failed to prove beyond a reasonable doubt that Airman Perez turned off the surveillance camera, since that is one of the elements, and I will re-read the elements on the conspiracy, since that is one of the—one of the two critical elements of conspiracy, if the government has failed to prove that, then they must acquit the accused.

Defense counsel responded, "All right. I don't have any problem with that—"

The court members were called back into the court room and the military judge instructed them that there was "an inherent inconsistency between your findings ... and your exception of the words in the specification." The military judge then repeated his instruction on the elements of conspiracy, including the element that "the accused ... performed the overt act alleged, that is, turned off the surveillance cameras in the

Base Exchange for the purpose of bringing about the object of the conspiracy." He instructed them further as follows:

> If you do not believe that the government has met its burden of proof, proving beyond a reasonable doubt, that Airman First Class Richard A. Perez turned off the surveillance cameras in the base exchange, which is the second element to the conspiracy offense, then you must acquit the accused of that charge. That's one of the key elements.
>
> And what I am going to have you do now is go back into deliberations, closed session deliberations, to reconsider your findings. You have the ability to do that.

Following further procedural instructions on the use of a revised findings worksheet, the president and a member asked the military judge whether they were limited to the overt act alleged or whether they could find another overt act. The military judge instructed them that the overt act alleged was "the sole act" that the court members could consider. After further deliberations, the court members asked that the testimony of SA Holland and SA Lee be played back from the court reporter's tapes. The testimony was played back and the court members returned to their deliberations. They ultimately found appellant guilty of conspiracy as charged.

### Motion for Directed Finding of Not Guilty (Issue I)

Appellant asserts that the military judge erred by not entering a finding of not guilty after the court members excepted an essential element of the offense. He argues further that the military judge was not authorized to direct the court members to reconsider their findings. The Government argues that the discussion between the president and the military judge was not an announcement of the findings, and that the military judge merely assisted the members in clarifying an irregular finding, as he was authorized to do.

■ The first question we must address is whether the president's disclosure that the court members had unanimously found the overt act not proved was an announcement of a finding of not guilty. We hold that it was not.

RCM 921(d), Manual for Courts–Martial, United States, 1984, authorizes the military judge to "examine any writing which the president intends to read to announce the findings and [he] may assist the members in putting the findings in proper form." Regarding formal announcement of findings, the rule provides, "Neither that writing nor any oral or written clarification or discussion concerning it shall constitute announcement of the findings."

■ The record clearly reflects that the president's disclosure of the vote occurred during the discussion of the proposed findings as reflected on the findings worksheet and the marked up copy of the charges and specifications. This is precisely the type of discussion contemplated by RCM 921(d). The announcement of findings contemplated by RCM 922 and 924 is the formal announcement after any discussions or clarifications of the finding have been completed. *See United States v. London,* 4 USCMA 90, 97, 15 CMR 90, 97 (1954) ("The only findings that can have legal effect are those formally and correctly announced in open court.").

■ The next question is whether the military judge should have entered a finding of not guilty without resubmitting the issue to the court members. RCM 917(a) authorizes the military judge to enter a finding of not guilty "before findings on the general issue of guilt are announced if the evidence is insufficient to sustain a conviction of the offense affected." RCM 917(d) provides that "[a] motion for a finding of not guilty shall be granted only in the absence of some evidence which, together with all reasonable inferences and applicable presumptions, could reasonably tend to establish every essential element of an offense charged." It further provides that "[t]he evidence shall be viewed in the light most favorable to the prosecution."

The military judge clearly had the power to enter a finding of not guilty in accordance with RCM 917. Nevertheless, we hold that

the military judge did not err by refusing to enter a finding of not guilty, because to do so would have been contrary to the evidentiary standard in RCM 917(d). The testimony of SA Lee, SA Holland, and Airman Carter, construed in the light most favorable to the prosecution, "could reasonably tend to establish" the overt act alleged.

■ Finally, we reach the question whether the military judge erred by directing the members to reconsider their finding, without giving them the opportunity to decide whether they wanted to reconsider. We hold that the military judge did not err.

RCM 924(a) authorizes court members to "reconsider any finding reached by them before such finding is announced in open session." RCM 924(b) sets out the procedure for reconsidering a finding. It provides that "[a]ny member may propose that a finding be reconsidered." RCM 924(b) provides: "Any finding of not guilty shall be reconsidered if a majority vote for reconsideration[,]" and "[a]ny finding of guilty shall be reconsidered if more than one-third of the members vote for reconsideration." There is no express authority for the military judge to direct reconsideration.

The military judge had two options in this case. First, he could have informed the members that the findings amounted to a finding of not guilty with respect to the conspiracy specification. He could have instructed them that if any member wished to reconsider that finding, they could so request. Finally, he could have given the procedural instructions for reconsideration of a finding of not guilty in accordance with RCM 924(b). Appellant argues that this course of action was the only permissible alternative.

The second option, which the military judge chose in this case, was to advise the members that a finding of guilty of conspiracy was inconsistent with a finding of not guilty as to the overt act, and to direct them to reconsider. In *United States v. London*, 4 USCMA at 95, 15 CMR at 95, this Court held that it was legal and proper for a law officer (the predecessor to the military judge) to direct the court members to reconsider an illegal finding of guilty. In that case the court members advised the law officer that they had voted to find the accused guilty of being an accessory after the fact but not guilty of larceny. Since being an accessory after the fact is not a lesser-included offense of the substantive offense of larceny, the findings of guilty would have been illegal. The law officer gave the court members further instructions and directed them to reconsider their findings. The court members reconsidered and found the accused guilty of larceny. Finding no military rule expressly on point, this Court looked to civilian practice, stating, "[T]he principles which govern civilian courts may properly be applied to courts-martial to the extent that they are not in conflict or out of harmony with military law and requirements." 4 USCMA at 95, 15 CMR at 95. After reviewing civilian practice, this Court concluded that, in the absence of a prohibition in the Uniform Code of Military Justice or the Manual for Courts–Martial, "the law officer's conduct was scrupulously proper." 4 USCMA at 95, 15 CMR at 95.

This same rationale—that a judge has authority to direct reconsideration of a defective verdict in the absence of an express provision to the contrary—is also followed in the federal district courts. Under Fed. R.Crim.P. 31(d) a judge has express authority to direct reconsideration of a non-unanimous verdict, but no express authority to direct reconsideration for any other reason. Nevertheless, federal Courts of Appeals have held that the district judge has authority to direct reconsideration of defective verdicts in situations not expressly covered by Fed. R.Crim.P. 31(d). *See, e.g., United States v. Hiland*, 909 F.2d 1114, 1136–37 (8th Cir. 1990); *United States v. Rastelli*, 870 F.2d 822, 835 (2d Cir.), *cert. denied*, 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989).

In appellant's case, the proposed finding of guilty of conspiracy, excepting the overt act alleged, would have been illegal. *See United States v. Collier*, 14 MJ 377 (CMA 1983) (overt act must be the same or substantially similar to the act alleged). Just as in *London*, the proposed finding was disclosed to the military judge prior to formal announce-

ment of findings. Likewise, as in *London,* the military judge informed the members that their proposed finding of guilty was illegal. As in *London,* the applicable version of the Uniform Code of Military Justice and Manual for Courts–Martial neither authorized nor prohibited the military judge from directing reconsideration of the illegal finding. The military judge advised the defense of his intention to direct the members to reconsider their findings, and the defense responded that they did not have "any problem" with that course of action. 40 MJ at 375. The military judge's additional instructions on the elements of conspiracy were not slanted toward the prosecution and were not objected to by the defense.

We conclude, therefore, that the military judge's actions in this case were consistent with the precedents of this Court as well as the practice in the federal district courts. Accordingly, we hold that the military judge did not err.

### Testimony Interpreting the Video Tape (Issue II)

█ Appellant argues that the OSI agents should not have been permitted to testify regarding their interpretations of the activity reflected on the video tape. Appellant argues that it was error to permit the agents to testify regarding their conclusion that appellant turned down the camera, because appellant's actions could not be seen on the video tape or the hidden camera in the exchange detectives' room. The Government argues that the military judge did not abuse his discretion by permitting the testimony, which could be challenged on cross-examination.

The OSI agents were not testifying as experts, but as lay witnesses. Mil.R.Evid. 701, Manual, *supra,* provides:

If the witness is not testifying as an expert, the testimony of the witness in the form of opinions or inference is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness of the determination of a fact in issue.

We hold that the military judge did not err by permitting the testimony. In this case the OSI agents were familiar with the operation and layout of the surveillance camera system. They knew that the exchange detectives were employed in two-person teams. They knew that Airman Carter and appellant worked as a team. They knew that the surveillance cameras were operated from a console in the exchange detectives' room. It was a logical and rational inference to conclude that, if one member of the team was visible on the surveillance camera as it was being turned down, the other member of the team was the person turning the camera down. The OSI agents' testimony as to their perceptions was analogous to allowing a witness familiar with the location of the controls on an automobile to testify that the person sitting in the left front seat was the driver. The testimony was typical circumstantial evidence, based on common-sense deductive reasoning and subject to the crucible of cross-examination. Admission of the testimony was well within the limits of the military judge's discretion.

### Decision

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.