# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**LEONICE JOSEPH**
**CORPORAL (E-4), U.S. MARINE CORPS**

**NMCCA 201300460**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 15 August 2013.
**Military Judge:** LtCol Eugene Robinson, Jr., USMC.
**Convening Authority:** Commanding Officer, 31st Marine
Expeditionary Unit, Okinawa, Japan.
**Staff Judge Advocate's Recommendation:** Maj A.T. Young,
USMC.
**For Appellant:** CAPT Tierney Carlos, JAGC, USN.
**For Appellee:** LT Ann Dingle, JAGC, USN.


**19 February 2015**


---------------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

FISCHER, Senior Judge:

A special court-martial consisting of officer members convicted the appellant, contrary to her pleas, of violating a lawful general order for wrongfully engaging in sexual activity within her barracks room and making a false official statement in violation of Articles 92 and 107, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 907. The members sentenced the appellant to be reduced to pay grade E-1, forfeiture of

$1,010.00 pay per month for 12 months, confinement for 12 months, and a bad-conduct discharge.  The convening authority (CA) approved only so much of the sentence as extended to 120 days' confinement, the adjudged forfeitures and reduction, and a bad-conduct discharge and, except for the bad-conduct discharge, ordered it executed.

The appellant raises seven assignments of error (AOE): (1) the evidence is legally and factually insufficient; (2) the military judge abused his discretion when he allowed testimony of the appellant's prior relationships; (3) the military judge abused his discretion when he allowed trial counsel to ask a witness why she admitted she had lied about being sexually assaulted; (4) the military judge abused his discretion when allowing improper testimony from an Naval Criminal Investigative Service (NCIS) Agent; (5) the lawful general order of which she was convicted was not a punitive order; (6) her sentence is widely disparate from that received by the accused in a companion case; and (7) her sentence is inappropriately severe.[1]

We specified the following two additional AOEs: (1) "By excepting the language 'made . . . an official statement' from the sole specification of Charge II, did the members find the appellant not guilty of an element of the offense and then make an illegal [or defective] finding of guilty that, left uncured prior to announcement of findings, necessitated a finding of 'not guilty' on that offense?" and (2) "If the answer to the first specified issue is in the affirmative, can the appellant's conviction as to Charge I and its sole specification be affirmed?"

After carefully considering the record of trial and the parties' pleadings, we conclude that the guilty findings to Charge II and the sole specification thereunder were improper because the members excepted an element of the offense from the specification.  After the corrective action set forth in our decretal paragraph, we conclude the remaining findings and the reassessed sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains.  Arts. 59(a) and 66(c), UCMJ.

---

[1] We find no merit to AOE III.  *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).  AOEs VI and VII are rendered moot by our actions on the sentence.

## Background

On 7 December 2012, Corporal (Cpl) WP engaged in sexual intercourse with the appellant in the appellant's barracks room.[2] The appellant's roommate, Private First Class (PFC) RC, testified that after she returned to the room that evening she observed the appellant and Cpl WP come out of the bathroom appearing to have just showered. PFC RC further indicated both were smiling and laughing.[3]

Afterwards, while the appellant was talking to her mother on the phone, Cpl WP began engaging in sexual intercourse with PFC RC.[4] The appellant discovered Cpl WP in bed with PFC RC and became very angry. She tore off the bed covers, hit Cpl WP several times, exclaimed "how can you do this to me," and then ordered him to leave the room.[5] PFC RC testified that the appellant then confronted her and PFC RC denied engaging in intercourse with Cpl WP because she feared the appellant's reaction.

After discovering PFC RC and Cpl WP together, the appellant left her room and spent the night in her friend, Cpl EM's, room. Cpl EM testified that the appellant was clearly upset and confided that she caught Cpl WP having sex with her roommate right after she had sex with him. Cpl EM also testified that the appellant said she "was going to do anything to ruin [Cpl WP's] life."[6]

PFC RC did not believe Cpl WP had sexually assaulted her. However, her corporal, having heard about the incident, convinced her to report it to NCIS as a sexual assault.[7] PFC RC falsely told NCIS that Cpl WP raped her, but when NCIS agents questioned her after further investigative efforts, PFC RC admitted that her initial statement was a lie.[8] In the course of

---

[2] Record at 318-19, 437.

[3] *Id*. at 397.

[4] *Id*. at 398, 435-36.

[5] *Id*. at 400.

[6] *Id*. at 437

[7] PFC RC testified that her corporal told her that since she [PFC RC] had been drinking prior Cpl WP engaging in sexual intercourse with her it was a sexual assault. *Id.* at 405.

[8] *Id.* at 406.

investigating PFC RC's sexual assault allegation, NCIS agents interviewed the appellant and she told the agents that Cpl WP had forcibly raped her on the night of 7 December 2012. At trial, the Government introduced evidence of Facebook messages the appellant sent Cpl WP, stating that she was going to report that he raped PFC RC and visit a medical facility herself.[9]

Additional facts necessary for the resolution of particular assignments of error are included below.

## Discussion

We address the specified AOEs first.

### *Defective Finding of Guilty*

The members found the appellant guilty of Charge II, making a false official statement; however, the members excepted the following words from the Specification: "made to Naval Criminal Investigative Service agents . . . an official statement to wit." In place of the excepted language the members substituted the words, "provided an affirmative response to NCIS that she had been raped by [Sgt MP]."[10] In taking this action, the members excepted an element of the offense from the modified specification, namely that the appellant made an "official statement."

It has been well-established that "[a]n exception by the court of part of a specification constitutes a finding that the accused is not guilty of what is alleged in the excepted language." *United States v. Nedeau*, 23 C.M.R. 182, 184 (C.M.A. 1957). "A Court of Criminal Appeals cannot find as fact any allegation in a specification for which the fact-finder below has found the accused not guilty." *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003) (citations omitted). A finding of guilty to the overall charge, but not guilty to one of the elements of the charge through exceptions and substitutions, amounts to a finding of not guilty. *See United States v. Perez*, 40 M.J. 373, 375-77 (C.M.A. 1994) (where members originally found guilt to charge of conspiracy but not to the overt act, the result was an illegal or defective verdict).

---

[9] Prosecution Exhibit 3.

[10] Record at 556-57. Cpl MP had been promoted to Sergeant by the time of trial.

4

In such a circumstance, before findings are announced, the military judge should inform members that their finding of "guilty" to a charge but "not guilty" to one of its elements amounts to a finding of "not guilty" and either (1) instruct them that any member may propose reconsideration of that finding or (2) direct the members to reconsider in accordance with RULE FOR COURTS-MARTIAL 924(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). *Id.* at 377. In this case the military judge never attempted to remedy the issue.

Thus, we conclude that the sole specification of Charge II must be set aside and dismissed because the members rendered an illegal or defective verdict that was not corrected before findings were announced.

### *Military Judge's Instruction*

Since we set aside the sole specification of Charge II, we also address the military judge's instruction to the members that, "[a]s a matter of law, the accused may not be found guilty of Charge I, as drafted, if you find her not guilty of Charge II."[11]

Military judges have "substantial discretionary power in deciding on the instructions to give." *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (citations omitted). We review a military judge's decision to give or not give a specific instruction, as well as the substance of any instructions given, "'to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence. The question of whether a jury was properly instructed [is] a question of law, and thus, review is *de novo*.'" *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (quoting *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996)).

We hold the military judge's instruction was improper and not binding on us. In effect the members found the appellant violated the lawful general order by wrongfully engaging in sexual activity with Cpl WP in her barracks room, but found her false response to NCIS agents' questions about being raped was not official. As such, we find the appellant was properly convicted of Charge I and its sole Specification despite our decision to set aside the appellant's conviction to Charge II.

---

[11] *Id.* at 511.

***Legal and Factual Sufficiency***

The appellant avers that her guilty findings are legally and factually insufficient.[12]

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *United States v. Reed*, 51 M.J. 559, 561-62 (N.M.Crim.Ct.App. 1999), *aff'd*, 54 M.J. 37 (C.A.A.F. 2000); *see also* Art. 66(c), UCMJ. The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325; *see also* Art. 66(c), UCMJ. Proof beyond a reasonable doubt does not mean that the evidence must be free of conflict. *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001).

Here, the Government presented ample evidence that the appellant violated a lawful general order by wrongfully engaging in sexual activity in her barracks room. After carefully reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

***Lawful General Order***

The appellant also asserts that the lawful general order of which she was convicted was not a punitive order.

We review a military judge's rulings on the lawfulness of a charged order *de novo*. *United States v. Deisher*, 61 M.J. 313, 317 (C.A.A.F. 2005). "[N]o single characteristic of a general order determines whether it applies punitively." *United States v. Jackson*, 61 M.J. 731, 734 (N.M.Ct.Crim.App. 2005) (quoting *United States v. Nardell*, 45 C.M.R. 101, 103 (C.M.A. 1972)) (additional citation omitted).

---

[12] We consider the remaining AOEs only as they relate to the Article 92, UCMJ, conviction.

To be punitive, "[t]he order in its entirety must demonstrate that rather than providing general guidelines for the conduct of military functions it is basically intended to regulate conduct of individual members and that its direct application of sanctions for its violation is self-evident." *Nardell*, 45 C.M.R. at 103 (citations omitted). "If the order requires implementation by subordinate commanders to give it effect as a code of conduct, it will not qualify as a general order for the purpose of an Article 92 prosecution." *Id.* (citations omitted).

The overall purpose of Marine Corps Bases Japan Order (MCOBJO) 11000.2C, (01 Dec 2010) (hereinafter "the Order") was to "provide instructions, rules, information, and requirements for the . . . use . . . of military bachelor housing facilities at Marine Corps activities in Japan."[13] The Commander enacted the policies contained therein as a tool to help sustain the discipline of unaccompanied Marines living in barracks.[14] The Order states that commanding officers must "[e]nsure that the provisions of this Order are widely publicized and that newly joined personnel are fully briefed on the responsibilities, prohibitions and restrictions contained" therein.[15] Finally, the Order was applicable to all Marine Corps Base Japan, III Marine Expeditionary Force, and tenant commands.[16] This Order was punitive in nature, as it was intended to regulate the conduct of service members living in barracks and was specifically implemented for the purpose of discipline.

The Government charged the appellant with failing to obey MCOBJO 11000.2C, Enclosure (1), Chapter 2, ¶ 3(d)(2), which states in pertinent part: "Sexual activity between persons not married to each other is strictly prohibited in BQs." "Commanding Officers are responsible for enforcing all visitation regulations for E-5 and below."[17]

The Order is clear that sexual activity among unmarried service members in barracks is prohibited and makes commanding officers responsible for enforcing violations of the Order.

---

[13] MCOBJO 11000.2C at ¶ 1

[14] *Id.* at ¶ 4.a(1).

[15] *Id.* at ¶ 4.b(7).

[16] *Id.* at ¶ 6.a.

[17] *Id.,* Enclosure (1), Chapter 2, at ¶ 3(d)(7).

In this case, at the time of the charged order violation, the appellant was below the pay grade of E-5.  She was stationed onboard Marine Corps Base Japan, and the Government put on evidence that she engaged in sexual activity in her barracks room.  The appellant was not married to Cpl WP at the time.  Therefore, the Order is punitive in nature and was enforceable against the appellant.

***Evidence of Prior Acts***

The appellant also avers that the military judge abused his discretion by allowing testimony regarding two of her prior relationships.

During the Government's direct examination of Cpl WP, the trial counsel asked him clarifying questions regarding a man named Kyle who the appellant referenced in Facebook messages she sent to him.[18]  The trial defense counsel objected on grounds of relevance, lack of notice, and MILITARY RULES OF EVIDENCE 403 and 404(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).[19]  The trial counsel responded that these references went toward clarifying the context of the appellant's Facebook messages to Cpl WP, the appellant's mindset, her understanding of her conduct, and her intention to retaliate against Cpl WP.[20]  The military judge found that the Government provided the defense notice under MIL. R. EVID. 304 of the Government's intent to present this evidence.[21]  The military judge then overruled the defense's objection without further explanation.

The appellant compared Cpl WP to "Kyle" in one of the messages.[22]  Cpl WP testified that the appellant dated and "hook[ed] up with" Kyle and then he was unfaithful to the appellant.[23]  Cpl WP understood this comparison to mean that, since Kyle's unfaithfulness "hit her pretty hard" and hurt her feelings, his sleeping with her roommate did as well.[24]

---

[18] Record at 333.

[19] *Id*. at 333-34

[20] *Id.* at 334.

[21] *Id*. at 336.

[22] PE 3 at 1.

[23] Record at 333, 337.

[24] *Id.* at 338.

8

Cpl WP also testified about "Carlos," the appellant's former fiancé who cheated on her with another female Marine and was also mentioned in a Facebook message sent by the appellant.[25] In one of the Facebook messages to Cpl WP, the appellant stated, "[i]f you think what I did to Carlos was bad, you have no f***ing idea!  SSgt [T] will be notified (it's my duty)."[26]  Cpl WP testified that the appellant had told him that, once she found out "Carlos" had been unfaithful to her, she took all of the "stuff that he - - that she gave him and just like bleached it, like sprayed it with bleach or whatever."[27]  The appellant's reference to what she did to "Carlos" made Cpl WP believe that she would also enact revenge against him for his actions with PFC RC.[28]

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010).  Evidence of uncharged misconduct is not admissible to prove the character of an accused or show that the accused acted in conformity with a certain character trait.  MIL. R. EVID. 404(b).  But evidence of an appellant's other acts may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *Id.*

The three-part test for admitting evidence under MIL. R. EVID. 404(b) is set forth in *United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A. 1989).  *See United States v. Thompson*, 63 M.J. 228, 230 (C.A.A.F. 2006).  First, the evidence must reasonably support a finding that the appellant committed prior crimes, wrongs, or acts. *Reynolds*, 29 M.J. at 109.  Second, the evidence must show a fact of consequence is made more or less probable by the existence of this evidence.  *Id.;* MIL. R. EVID. 401.  Third, the probative value of the evidence cannot be "substantially outweighed by the danger of unfair prejudice[.]" *Reynolds*, 29 M.J. at 109 (quoting MIL. R. EVID. 403) (additional citation omitted).  When a military judge fails to articulate a balancing test on the record, their decision to admit evidence will receive less deference. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009).

---

[25] *Id.* at 339.

[26] PE 3 at 2.

[27] Record at 339.

[28] *Id.* at 340.

9

First, the evidence admitted by trial counsel regarding the prior relationships mentioned by the appellant in her Facebook messages to Cpl WP support a finding that the appellant committed the acts. The evidence presented showed she was in two other relationships that ended with her partner's unfaithfulness. Her messages to Cpl WP compare him to men she believed had wronged her in the past. This comparison buttresses the Government's theory that she voluntarily engaged in sexual activity with Cpl WP because she compared him to others with whom she had consensual relationships. In one of her prior relationships, she took retribution against her unfaithful partner and implied to Cpl WP that she was going to do something more severe to him, thus providing evidence of her motive.

Second, the evidence presented on the appellant's prior relationships was highly relevant in proving that the appellant engaged in consensual sexual activity with Cpl WP in her barracks room on the night in question.

Third, the probative value of this evidence outweighs the danger of unfair prejudice. Here, the appellant's intent was key. To meet its burden on the charges, the Government had to prove beyond a reasonable doubt that the appellant engaged in consensual sex with Cpl WP in her barracks room and that she subsequently lied to NCIS that the interaction was rape. The appellant's comparison of Cpl WP to other consensual sexual partners and her threat to take revenge upon him that was more severe than what she had done to another in the past help establish required elements of her charges.

The appellant argues that the Government violated the spirit of MIL. R. EVID. 412 by entering evidence of her prior relationships. However, the Government offered only so much clarifying information as was necessary to provide context to the appellant's messages to Cpl WP and to show her intent and motive on the date of their sexual activity.

We find that this evidence was properly admitted under MIL. R. EVID. 404(b).

### NCIS Special Agent (SA) M's Testimony

The appellant next argues that the military judge abused his discretion when he allowed NCIS SA M to testify that (1) he "threw out" the appellant and PFC RC's interviews regarding their rape allegations against Cpl WP; (2) he interviewed PFC RC

a second time to "truly determine" whether her sexual encounter with Cpl WP was consensual; (3) Cpl WP told him that his sexual encounters with the appellant and PFC RC were both consensual; and (4) he concluded the "math wasn't really adding up regarding the [rape] allegations."[29]

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Kasper*, 58 M.J. 314, 318 (C.A.A.F. 2003). However, where an appellant did not preserve the issue by making a specific and timely objection, that error will be forfeited in the absence of plain error. *United States v. Knapp,* 73 M.J. 33, 36 (C.A.A.F. 2014); MIL. R. EVID. 103(d). Plain error is established if: (1) there was error; (2) the error was clear or obvious; and (3) the error was materially prejudicial to the appellant's substantial rights. *Knapp,* 73 M.J. at 36.

Assuming without deciding that the military judge plainly erred in permitting SA M's testimony, we find no material prejudice to the appellant. To evaluate "whether erroneous admission of Government evidence is harmless, this court uses a four-part test, weighing: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Berry*, 61 M.J. 91, 98 (C.A.A.F. 2005) (citations omitted).

Aside from SA M's testimony, the Government presented a strong case through the testimony of PFC RC, Cpl WP, and Cpl EM as well as the appellant's multiple admissions indicating that her sexual activity with Cpl WP on the night in question was consensual. The defense rested on the Government's burden and the presumption of innocence, electing not to present evidence at trial. While the evidence provided by SA M was material, PFC RC and Cpl WP already provided substantially similar information on the points relating to them. Moreover, his additional testimony was elicited in the context of his investigative actions and we are confident it did not unduly influence the members. Under the circumstances of this case and given our setting aside the appellant's conviction for false official statement and the extensive evidence indicating the appellant's guilt on the remaining charge as stated *supra*, we find any error related to admission of SA M's testimony to be harmless.

---

[29] Record at 478.

**Sentence Reassessment**

Having dismissed the sole specification of Charge II, we must also determine whether we are able to reassess the sentence in accordance with the principles set forth in *United States v. Cook*, 48 M.J. 434, 438 (C.A.A.F. 1998). "A 'dramatic change in the penalty landscape' gravitates away from the ability to reassess" a sentence. *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) (quoting *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003)). "However, on occasions where [this] court is convinced that the accused's sentence would have been at least of a certain magnitude, even if no error had occurred at trial, the court may remedy the error by reassessing the sentence itself or by deciding that the error was not prejudicial." *Cook*, 48 M.J. at 438.

Here, the penalty landscape stayed substantially the same because the appellant still faced the special court-martial maximum punishment.

**Conclusion**

The findings of guilty to Charge II and the sole specification thereunder are set aside and that Charge and specification are dismissed with prejudice. The remaining guilty findings are affirmed. Upon reassessment, we affirm a sentence of 30 days' confinement, forfeiture of $1,010.00 pay for one month, and reduction in rate to pay grade E-3. We conclude that such a sentence is no greater than that which would have been awarded by the members for the charge and specification that we affirm and is appropriate under the circumstances of this case.

Chief Judge MITCHELL and Judge MCDONALD concur.

For the Court

R.H. TROIDL
Clerk of Court

12