*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, HACKEL, and KISOR
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Justin T. ELLARD**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202200051**

_____

Decided: 31 August 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Nicholas S. Henry (arraignment)
Eric A. Catto (trial)

Sentence adjudged 18 November 2021 by a general court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of officer and enlisted members. Sentence in the Entry of Judgment: reduction to E-1, confinement for nine months, forfeiture of all pay and allowances, and a bad-conduct discharge.[1]

---

[1] Appellant received credit for 216 days of pretrial confinement.

For Appellant:
*Mr. William E. Cassara, Esq.*
*Lieutenant Christopher B. Dempsey, JAGC, USN*

For Appellee:
*Lieutenant James P. Wu Zhu, JAGC, USN*
*Captain Tyler W. Blair, USMC*

Senior Judge HACKEL delivered the opinion of the Court, in which Chief Judge HOLIFIELD and Senior Judge KISOR joined.

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

————————————

HACKEL, Senior Judge:

A panel of officer and enlisted members convicted Appellant, contrary to his pleas, of three specifications of violating a lawful general order, one specification of aggravated assault by inflicting substantial bodily harm, and one specification of negligently discharging a firearm, in violation of Articles 92, 128, and 134, Uniform Code of Military Justice [UCMJ].[2] Specifically, he negligently shot another Marine, Corporal [Cpl] Bravo.[3] Appellant also failed to register his personal firearm as required, wrongfully stored ammunition with his firearm while residing in the barracks, and wrongfully transported a loaded firearm aboard the installation.

Appellant asserts five assignments of error (AOEs), which we reorder as follows: (1) his convictions for violating a lawful general order in violation of

---

[2] 10 U.S.C. §§ 892, 928, 934. Upon the motion of trial defense counsel, which was unopposed by the Government, the military judge merged Charge IV (discharging of a firearm through negligence) with Charge III (aggravated assault inflicting substantial bodily harm) for the purposes of sentencing.

[3] All names in this opinion, other than those of Appellant, the judges, and appellate counsel, are pseudonyms. We note that some of the witnesses in this case were active duty Marines at the time of the incident but were no longer on active duty at the time of trial. For the sake of clarity, we will refer to the witnesses by their ranks at the time of the incident.

Art. 92, UCMJ, are legally insufficient; (2) his conviction for aggravated assault is legally and factually insufficient; (3) his convictions for Charge III (aggravated assault), Charge IV (negligent discharge), and the three specifications of Charge II (violating a lawful general order) are an unreasonable multiplication of charges; (4) trial counsel committed plain error by misstating the law and evidence in his opening statement, closing argument, and sentencing argument; and (5) the commanding officer who issued the order at issue in Charge I (willfully disobeying a superior commissioned officer, in violation of Art 90, UCMJ—of which Appellant was acquitted) was an accuser and his actions in ordering the preliminary hearing and recommending trial by general court-martial created an improper referral process.[4] We find no prejudicial error and affirm.

# I. BACKGROUND

"He was lucky. He was very lucky."[5]

The basic facts are not in dispute. On 15 April 2021, while practicing drawing his pistol from his new holster, Appellant accidentally shot Cpl Bravo in the abdomen. Corporal Bravo survived the gunshot wound, which fortunately did not pierce any internal organs. However, the injury did require Cpl Bravo to receive emergency medical treatment and spend a few days in the hospital.

On the evening in question, Appellant and his fellow Marines had just returned from an exercise in Norway. Appellant, Cpl Bravo, Lance Corporal [LCpl] Delta, and LCpl Alpha had picked up dinner and were eating in LCpl Delta's barracks room. While they were still eating and relaxing, Appellant retrieved his new holster and practiced drawing his 9-millimeter pistol, presenting it, and dry firing.

After practicing with the weapon unloaded, Appellant loaded the weapon, and chambered a round. He continued to practice removing the pistol from the holster and putting it back. While doing this, Appellant pulled the trigger and accidentally shot Cpl Bravo.

---

[4] We have reviewed Appellant's fifth AOE and find it to be without merit. *United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987); *See United States v. Tittel*, 53 M.J. 313 (C.A.A.F. 2000) (finding that a convening authority did not become an accuser despite having given the order the accused was alleged to have disobeyed because there was no evidence the convening authority became personally involved).

[5] Dr. Uniform—the trauma surgeon who treated the victim. R. at 251.

The Marines in LCpl Delta's room immediately took action to help Cpl Bravo, applying pressure to the wound and calling for emergency services. Corporal Bravo was taken to the hospital where he received treatment. Corporal Bravo's trauma surgeon cauterized the wound and prescribed pain medication. The bullet entered a few inches above his belly button and exited approximately seven inches across on his right side. The bullet did not pierce the peritoneal cavity, but passed through the skin, fat, and muscle layers of the abdominal wall before exiting. Corporal Bravo remained in the hospital for several days before being released. He suffered scarring from the bullet wound, but no other long-term physical effects.

The subsequent investigation revealed that Appellant possessed multiple firearms, which he kept in his barracks room and personal vehicle, and also kept hundreds of rounds of rifle and pistol ammunition in his barracks room. He admitted to possessing the firearms and ammunition and to transporting a loaded personal firearm aboard the installation.

Additional facts will be set forth as necessary to address Appellant's AOEs.

## II. DISCUSSION

### A. Appellant's Convictions are Legally and Factually Sufficient

Appellant argues that his convictions for violations of a general order are legally insufficient, and his conviction for aggravated assault is both legally and factually insufficient. We review such questions de novo.[6]

To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[7] In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution."[8] In doing so, we are mindful that "[f]indings may be based on direct or circumstantial evidence."[9]

---

[6] Article 66(d)(1), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[7] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[8] *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (citation and internal quotation marks omitted).

[9] *United States v. Long*, 81 M.J. 362, 368 (C.A.A.F. 2021).

In evaluating factual sufficiency arguments raised by Appellant, we first determine whether Appellant has made a specific showing of a deficiency of proof.[10] To do so, Appellant "must identify a weakness in the evidence admitted at trial to support an element (or more than one element) and explain why, on balance, the evidence (or lack thereof) admitted at trial contradicts a guilty finding."[11] After Appellant has made a specific showing, "the Court may weigh the evidence and determine controverted questions of fact."[12] When evaluating the evidence, we must give appropriate deference both "to the fact that the trial court saw and heard the witnesses and other evidence," and "to findings of fact entered into the record by the military judge."[13] We may only set aside (or modify) a guilty finding "[i]f, as a result of the review conducted [after the appellant makes a specific showing of a deficiency of proof], [we are] clearly convinced that the finding of guilty was against the weight of the evidence."[14]

### 1. *Violation of a lawful general order*

Appellant was found guilty of three specifications of violating a lawful general order for failing to register his personal firearms, wrongfully storing ammunition with his firearm while residing in the barracks, and wrongfully transporting a loaded firearm aboard the installation. He challenges the legal sufficiency of these convictions.

To convict Appellant of violating a lawful general order, the Government was required to prove: (1) that there was in effect a certain lawful general order or regulation; (2) that the accused had a duty to obey it; and (3) that the accused violated or failed to obey the order or regulation.[15] "Knowledge of a general order or regulation need not be alleged or proved as knowledge is not an element of this offense and a lack of knowledge does not constitute a defense."[16]

---

[10] Art. 66(d)(1)(B).

[11] *United States v. Harvey*, 83 M.J. 685, 2023 CCA LEXIS 220, *11 (N-M Ct. Crim. App. 2023).

[12] Art. 66(d)(1)(B)(ii).

[13] Art. 66(d)(1)(B)(ii).

[14] Art. 66(d)(1)(B)(iii).

[15] *Manual for Courts-Martial, United States* (2019 ed.) [*MCM*], pt. IV, para. 18.b.(1) at IV-27.

[16] *MCM*, pt. IV, para. 18.c.(1)(d) at IV-27.

Appellant does not argue that the order in question—Marine Corps Installations East-Marine Corps Base Camp Lejeune Order 5500.1 w/ Ch 1, *Possession Registration, Use, and Sale of Privately Owned Firearms, Weapons, Ammunition, Explosives, Fireworks, and Pyrotechnics*, dated 8 May 2015 [MCIEAST-MCB CAMLEJO 5500.1 w/ CH 1]—was not a lawful general order. Rather, he argues that his convictions for the three specifications are legally insufficient because, although knowledge is not generally an element of this offense, this specific order requires knowledge in that it tasks commanding officers to ensure new personnel are informed of the provisions of the order.[17] Specifically, the order states that commanding officers shall "[e]nsure all newly assigned personnel are informed of the provision of this Order, during initial orientation, and as often thereafter as deemed necessary."[18] Appellant relies on *United States v. Nardell*, in which the Court of Military Appeals explained that, "[i]f [an] order requires implementation by subordinate commanders to give it effect as a code of conduct, it will not qualify as a general order for the purpose of an Article 92 prosecution."[19]

"No single characteristic of a general order determines whether it applies punitively to members of a command."[20] To be punitive, "[t]he order in its entirety must demonstrate that rather than providing general guidelines for the conduct of military functions it is basically intended to regulate conduct of individual members and that its direct application of sanctions for its violation is self-evident."[21]

We decline to adopt Appellant's argument, which conflates the publication of the order with its implementation and punitive nature. The Court in *Nardell* reviewed the conviction of a Marine who had played slot machines while serving as the manager for the staff noncommissioned officer club in DaNang, Vietnam, in violation of a general order. In its analysis, the Court found that the order provided for the operation of messes, clubs, and miscellaneous nonappro-

---

[17] Appellant's Brief, at 25.

[18] MCIEAST-MCB CAMLEJO 5500.1 w/ CH 1, para. 15.

[19] *United States v. Nardell*, 21 U.S.C.M.A. 327, 329, 45 C.M.R. 101, 103 (C.M.R. 1972).

[20] *Id.*

[21] *Id.*

priated fund activities within the command—none of which suggested a purpose other than advisory or instructional.[22] The Court of Military Appeals considered the order to be predominantly instructional and directory rather than a code of conduct, with a requirement for subordinate commanders to provide specific notice of the prohibition leading to the charged misconduct.[23]

Here we have no concerns about the clarity or punitive nature of MCIEAST-MCB CAMLEJO 5500.1 w/ CH 1. The order regulates the behavior of on-installation activities to "ensure the security and safety of our community, which is essential to preserve the good order and discipline aboard MCIEAST-MCB CAMLEJ."[24] Additionally, on its very first page, the order provides for a "punitive effect" in that [v]iolations of this Order by military personnel are punishable as violations of Article 92 of the Uniform Code of Military Justice and can subject the violator to court-martial or other judicial or administrative action."[25] The order is clear on its face with regard to the proscribed conduct and requires no implementation by subordinate commanders.

With regard to the order's publication, the military judge considered the Government's request to take judicial notice of the fact that the order was properly published. After hearing evidence on the matter, the military judge found that the legal requirements of publication had been met and took judicial notice of the fact that the order was a lawful order, properly published and promulgated, and in effect on 15 April 2021, the date Appellant shot Cpl Bravo.[26] Notably, the military judge heard the testimony of the Marine Corps Installations East deputy adjutant, who testified that once signed, orders are posted on the unit website and accessible to everyone on the world wide web, and that this process occurred for MCIEAST-MCB CAMLEJO 5500.1 w/ CH 1.[27] We see nothing wrong with the military judge's reasoning or decision to take judicial notice, particularly after civilian defense counsel admitted having no reason to doubt the testimony of the deputy adjutant.[28] We also note that Appellant himself has not challenged this decision.

---

[22] *Id.* at 329-30.

[23] *Id.* at 330.

[24] MCIEAST-MCB CAMLEJO 5500.1 w/ CH 1, para. 4.a(1).

[25] MCIEAST-MCB CAMLEJO 5500.1 w/ CH 1, para. 3.a.

[26] R. at 133-46; App. Ex. XXIX; R. at 397.

[27] R. at 136-37.

[28] R. at 145.

Next, we find that the language directing commanding officers to ensure their personnel are informed of the order does not impose an additional step in the publication of MCIEAST-MCB CAMLEJO 5500.1 w/ CH 1. Rather, we consider it as emphasis by the Commander to guarantee the safety of the installation, particularly given the potential for serious injury that can be caused by the regulated items (firearms, ammunition, explosives, etc.).[29] As such, the requirement that commanding officers ensure new personnel are aware of the general order and its provisions does not constitute an additional implementation step necessary to give the order punitive effect.

Moving to the substantive elements of Charge II, through Appellant's actions and admissions to NCIS agents, we find ample evidence that Appellant was a member of a unit located on board Camp Lejeune and therefore subject to the order, and that he failed to register his personal firearms, wrongfully stored ammunition with his firearm while residing in the barracks, and wrongfully transported a loaded firearm aboard the installation. Each of these discrete actions violated the order.

We are therefore convinced that a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt to conclude that Appellant violated a lawful general order for each of the three specifications. Accordingly, Appellant's convictions for violating a lawful general order are legally sufficient.

### 2. Aggravated Assault

Appellant was acquitted of aggravated assault by grievous bodily harm, but found guilty of the lesser included offense of aggravated assault by inflicting substantial bodily harm for shooting Cpl Bravo in the abdomen.

For Appellant to be found guilty of aggravated assault causing substantial bodily harm by a loaded firearm, the Government was required to prove: (1) that the accused assaulted Cpl Bravo; (2) that substantial bodily harm was thereby inflicted upon Cpl Bravo; and (3) that the injury was inflicted with a

---

[29] *See United States v. Joseph,* No. 201300460, 2015 CCA LEXIS 54, *10-11 (N-M. Ct. Crim. App. Feb. 19, 2015) (finding that a general order requiring "that commanding officers must 'ensure that the provisions of this Order are widely publicized and that newly joined personnel are fully briefed on the responsibilities, prohibitions and restrictions contained' therein" was a punitive order because "it was intended to regulate the conduct of service members living in barracks and was specifically implemented for the purpose of discipline.")

loaded firearm.[30] "Substantial bodily harm" means "(i) a temporary but substantial disfigurement, or (ii) a temporary but substantial loss or impairment of function of any bodily member, organ, or mental faculty."[31]

Appellant does not dispute that he shot Cpl Bravo. He acknowledges that his actions were culpably negligent and Cpl Bravo was injured as a result.[32] Nonetheless, he argues that the injury Cpl Bravo sustained does not qualify as substantial bodily harm. Specifically, Appellant argues that Cpl Bravo did not suffer a temporary but substantial disfigurement.

In *United States v. Spearman*, the Court of Military Appeals affirmed the conviction of a Soldier found guilty of assault in which grievous bodily harm was inflicted when he stabbed another Soldier four times with a steak knife, leading the victim to require transportation to the hospital for his wounds and to be stitched up after "not too much" blood loss.[33] The victim returned to duty shortly thereafter. Like here, the appellant in *Spearman* argued that "grievous bodily harm was not visited on the victim because he suffered only superficial cuts, none of which were disfiguring or disabling."[34] The Court disagreed with this characterization of the victim's injuries, finding that "the record reflects that his wounds required hospital treatment, had to be stitched up, were 'stab' wounds, and that at least three of them were in an area of the body containing the vital organs."[35]

The losing argument put forth in *Spearman* carries even less weight here. Appellant was found guilty of  assault in which substantial bodily harm is inflicted, a lesser included offense of that charged in *Spearman.* Here the Government presented evidence that the bullet wound left a hole through Cpl Bravo's abdomen and left two scars on his torso. We find that the threshold for "substantial bodily harm" is met here in Appellant's act of shooting Cpl Bravo in the torso, "five or six centimeters above his belly button," with the bullet penetrating skin, fat, and abdominal muscles, traveling through his body, and leaving an exit wound on Cpl Bravo's right side on the same plane as his belly

---

[30] *MCM*, pt. IV, para. 77.b.(4)(b) at IV-118.

[31] *MCM*, pt. IV, para. 77.c.(1)(b) at IV-118.

[32] Appellant's Brief, at 15.

[33] *United States v. Spearman*, 23 U.S.C.M.A. 31, 32, 48 C.M.R. 405, 406 (C.M.A. 1974).

[34] *Id*. at 33.

[35] *Id*.

button.[36] The injury required expert medical intervention followed by several days of recovery at the hospital for proper monitoring and wound care. Similar to the Court in *Spearman*, we refuse to adopt Appellant's contention that the injury needed to be more severe—to have damaged internal organs or penetrated the peritoneal cavity, for example—to constitute substantial bodily harm.

We are convinced that a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt and conclude that Cpl Bravo's injury constitutes substantial bodily harm. Appellant's conviction for aggravated assault causing substantial bodily harm is therefore legally sufficient.

Turning to factual sufficiency, we first look at whether Appellant has identified a specific deficiency in proof by identifying a weakness in the evidence admitted at trial.[37] Appellant concedes that his actions were culpably negligent and that Cpl Bravo suffered a gunshot wound as a result of his actions.[38] Nonetheless, Appellant argues that as a matter of definition, the gunshot wound suffered by Cpl Bravo does "not rise to the level of substantial bodily harm."[39] We note that nothing in Appellant's briefs specify any deficiencies in the evidence; rather, Appellant reiterates his argument of legal insufficiency of the evidence using the term, "factual sufficiency," and attempts to import definitions from Article 128a (maiming) into Article 128.[40] We disagree with Appellant and see no meaningful argument that there was a specific deficiency of proof in this case. Regardless, we are also not convinced that the finding of guilty is against the weight of the evidence. Thus, Appellant's conviction for aggravated assault is factually sufficient.

### 3. Negligent Discharge of a Firearm

Appellant does not specifically challenge the legal sufficiency of his conviction for negligent discharge of a firearm. Nonetheless, we have reviewed the evidence in this case and are satisfied that Appellant's conviction for that offense is legally sufficient. As Appellant does not challenge the factual sufficiency for the conviction for Charge IV, we will not address that.[41]

---

[36] R. at 233-36.

[37] *Harvey*, 83 M.J. 685, 2023 CCA LEXIS 220, at \*11.

[38] Appellant's Brief at 15.

[39] Appellant's Brief at 15.

[40] Appellant's Brief at 12-17; Appellant's Reply Brief at 11-14.

[41] Art 66(d)(1)(B)(i).

**B. The Charges against Appellant were not Unreasonably Multiplied**

At trial, Appellant moved to have the three specifications of Charge II (violation of lawful general order) merged for sentencing. He also moved to have the sole specification of Charge III (aggravated assault) and the sole specification of Charge IV (negligent discharge of a firearm) merged for sentencing. He did not seek to have the charges merged for findings. The military judge merged Charges III and IV for sentencing, but denied Appellant's request regarding the three specifications of Charge II. Appellant now asserts the military judge erred in not merging Charges III and IV for findings (as opposed to sentencing), and in not merging specifications 1 and 2 of Charge II for findings and sentencing based on an unreasonable multiplication of charges.

We review a military judge's decision to deny relief for the unreasonable multiplication of charges for an abuse of discretion.[42] "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[43] When an appellant fails to raise a claim of unreasonable multiplication of charges at trial the issue is reviewed on appeal for plain error.[44] "For an appellant to prevail under plain error review, there must be an error, that was clear or obvious, and which prejudiced a substantial right of the accused."[45]

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges."[46] Military courts review the non-exclusive factors set forth in *United States v. Quiroz* to determine whether there is an unreasonable multiplication of charges.[47] Those factors include: (1) whether the appellant objected at trial; (2) whether each charge and specification is aimed at distinctly separate criminal acts; (3) whether the number of charges and specifications misrepresent or exaggerate the appellant's crimi-

---

[42] *United States v. Campbell*, 71 M.J. 19 (C.A.A.F. 2012).

[43] *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010).

[44] *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 20009).

[45] *United States v. Coleman*, 79 M.J. 100, 103 (C.A.A.F. 2019) (quoting *United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019)).

[46] R.C.M. 307(c)(4).

[47] *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001).

nality; (4) whether the number of charges and specifications unreasonably increase the appellant's punitive exposure; and (5) whether there is any evidence of prosecutorial overreach or abuse in the drafting of the charges.[48]

First, we review Appellant's assertion that the military judge should have merged Specifications 1 and 2 of Charge II for findings for plain error. We look to the *Quiroz* factors to determine if there was error. As explained above, Appellant did not move for merger of these specifications for findings at trial. We find that the charges and specifications are aimed at distinctly separate criminal acts—(1) failing to register his firearms as required by the instruction; and (2) wrongfully storing ammunition with his firearm while residing in the barracks—and do not misrepresent or exaggerate Appellant's criminality. One clearly could commit either offense while not committing the other. By facing two specifications rather than one, Appellant's punitive exposure increased by two years. We do not find this increase to be unreasonable. Finally, we find no evidence of prosecutorial overreach. Thus, we find Appellant has failed to demonstrate that there was error, plain or otherwise.

Second, we review the military judge's denial of Appellant's motion to merge for sentencing the three specifications under Charge II for an abuse of discretion. In denying Appellant's motion for merger, the military judge reviewed the *Quiroz* factors and found "the violations in the specifications to be aimed at distinctly separate acts. The number of the charges does not misrepresent or exaggerate the accused criminality, and the Court does not find prosecutorial overreaching in the drafting and does not find that the number [of] charges [and] specifications unreasonably increase[s] the punitive exposure to the accused. So that portion of the defense UMC motion is denied."[49]

While Appellant did object at trial, we agree with the military judge's analysis regarding the other *Quiroz* factors. Thus, we find that the military judge did not abuse his discretion in denying Appellant's motion to merge the three specifications under Charge II for sentencing.

Finally, we review Appellant's argument that the military judge should have merged Charges III (aggravated assault) and IV (negligent discharge of a firearm) for findings for plain error. We find that the charges and specifications are aimed at distinctly separate criminal acts: (1) assaulting Cpl Bravo by shooting him; and (2) negligently discharging a firearm. These offenses require distinctly different elements of proof, and they do not misrepresent or

---

[48] *Id.* at 388.

[49] R. at 511.

exaggerate Appellant's criminality. By facing two charges rather than one, Appellant's potential punitive exposure increased by three months.[50] We do not find this increase to be unreasonable. Finally, we find no evidence of prosecutorial overreach. Thus, we find Appellant has failed to demonstrate that there was error, plain or otherwise.

**C. Trial Counsel did not Commit Plain Error**

Appellant argues that trial counsel committed plain error when he misstated the law and evidence during his opening statement, closing argument, and sentencing argument.

Prosecutorial misconduct occurs when a prosecutor "oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense."[51] It is "defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon."[52] The conduct of the "trial counsel must be viewed within the context of the entire court-martial . . . not [just] on words in isolation."[53]

We review prosecutorial misconduct and improper argument de novo.[54] When properly objected to at trial, we review for prejudicial error to an appellant's substantial rights.[55] "Challenged argument is reviewed not based on 'words in isolation, but on the argument viewed in context,' and 'within the context of the entire court-martial.'"[56]

---

[50] As previously noted, the military judge merged Charges III and IV for the purposes of sentencing.

[51] *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)).

[52] *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger,* 295 U.S. at 88)).

[53] *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)).

[54] *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citing *United States v. Sewell,* 76 M.J. 14, 18 (C.A.A.F. 2017)).

[55] *Id.* (citing *Fletcher*, 62 M.J. at 179); *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019).

[56] *United States v. Causey*, 82 M.J. 574, 581 (N-M Ct. Crim. App. 2022) (citing *Baer*, 53 M.J. at 238 (citation and internal quotation marks omitted)).

If no objection for improper argument is made at trial, "we review for plain error."[57] "The plain error doctrine is invoked to rectify those errors that seriously affect the fairness, integrity or public reputation of judicial proceedings. As a consequence, it is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result."[58] "Under plain error review, Appellant bears the burden of demonstrating that: '(1) there was error, (2) the error was clear and obvious, and (3) the error materially prejudiced a substantial right of the accused.'"[59] "Thus, we must determine: (1) whether trial counsel's arguments amounted to clear, obvious error; and (2) if so, whether there was a reasonable probability that, but for the error, the outcome of the proceeding would have been different."[60]

### 1. Opening Statement and Closing Argument

During his opening statement trial counsel claimed that HM3 Mike "happened to be close by luckily. Luckily, all these Marines were trained in combat lifesaving and were able to save Corporal [Bravo's] life."[61] He also claimed that the actions of Cpl Delta and LCpl Alpha "helped save Corporal [Bravo]."[62] The Defense did not object to trial counsel's statements, but instead argued during opening statement that Cpl Bravo was never in risk of losing his life.

During trial, the trauma surgeon who treated Cpl Bravo testified that the injury was not life-threatening and did not involve a substantial risk of death because the bullet did not pierce the peritoneal cavity and instead was only a soft tissue injury.

During rebuttal closing argument, trial counsel attempted to quote the instruction on reasonable doubt:

> "I would remind you to look at the Military Judge's instruction. Beyond a reasonable doubt does not by any – or I'm sorry, all reasonable doubt. That's not the standard. The government doesn't have to rule out all reasonable doubt. The government –

---

[57] *Id.*

[58] *United States v. Fisher*, 21 M.J. 327, 328-29 (C.M.A. 1986).

[59] *United States v. Cueto*, 82 M.J. 323, 334 (C.A.A.F. 2022) (quoting *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018)).

[60] *Voorhees*, 79 M.J. at 9 (internal citation and quotation omitted).

[61] R. at 168-69.

[62] R. at 170.

the proof beyond a reasonable doubt is proof that leaves you firmly convinced of the accused's guilt, that's the standard of reasonable doubt, members."[63]

Immediately after the Government's rebuttal—on the same page of the transcribed record—the military judge instructed the members, "counsel have referred to the instructions that I gave you, if there is any inconsistency between what counsel have said about the instructions and the instructions which I gave you, you must accept my statement as being correct."[64]

Because Appellant did not object at trial we review trial counsel's argument for plain error. The Government argues that trial counsel's statements about saving Appellant's life were a reasonable characterization of the evidence. Regarding trial counsel's misstatement of the burden of proof, the Government concedes error, but argues that Appellant was not prejudiced by the error.[65] We agree with the Government that trial counsel's misstatement of the burden of proof was error.

Appellant was charged with aggravated assault inflicting grievous bodily harm. The Government attempted to prove that the injury suffered by Cpl Bravo involved a substantial risk of death. Appellant's entire defense at trial focused on the argument that Cpl Bravo's life was never in jeopardy. The members apparently agreed with Appellant; rather than convict him of aggravated assault by grievous bodily harm, they convicted Appellant of aggravated assault by substantial bodily harm. As explained above, substantial bodily harm required the Government to prove temporary but substantial disfigurement, while grievous bodily harm would have required the government to prove a substantial risk of death.[66]

We are confident that Appellant has not demonstrated that trial counsel's comments about the "life-saving" actions taken by Appellant and his fellow Marines were not a fair argument based on the evidence. Even assuming plain and obvious error, we do not find that Appellant has demonstrated that but for counsel's argument there is a reasonable probability that the outcome of the proceeding would have been different.[67]

---

[63] R. at 437.

[64] R. at 437.

[65] Appellee's Brief at 24.

[66] *MCM*, pt IV, para. 77.c.(1)(c) at IV-118.

[67] *Voorhees*, 79 M.J. at 9.

Similarly, we find that Appellant has not demonstrated a reasonable probability that the outcome of the proceeding would have been different but for trial counsel's misstatement of the burden of proof. We do not evaluate trial counsel's comments in a vacuum, but instead review them within the context of the court-martial as a whole. The military judge properly instructed the members on reasonable doubt before trial counsel's argument:

> Lastly, the burden of proof to establish the guilty of the accused beyond a reasonable doubt is on the government. The burden never shifts to the accused to establish innocence or to disprove the facts necessary to establish each element of each offense. By reasonable doubt is intended, not fanciful, speculative or ingenuous doubt or conjecture, but an honest and actual doubt suggested by the material evidence of lack of it in the case.

> It is a genuine misgiving caused by insufficiency of proof of guilt. Reasonable doubt is a fair and rational doubt based upon reason and common sense, and arising from the state of the evidence. Proof beyond a reasonable doubt if proof that leaves you firmly convinced of the accused guilt.[68]

After trial counsel's misstatement, the military judge immediately instructed the members that if anything counsel said differed from the instructions already provided the members must apply the law as instructed by the military judge.

"We presume, absent contrary indications, that the panel followed the military judge's instructions."[69] Here, the military judge correctly instructed the members regarding reasonable doubt. After trial counsel's misstatement, the military judge immediately instructed the members that they were to follow the instructions as given by him. We are satisfied that the members applied the law as instructed by the military judge. Indeed, as already explained, the members found Appellant not guilty of inflicting grievous bodily harm and instead convicted him of the lesser included offense of inflicting substantial bodily harm.

---

[68] R. at 413-14.

[69] *United States v. Norwood*, 81 M.J. 12, 20 (C.A.A.F. 2021) (quoting *United States v. Short*, 77 M.J. 148, 151 (C.A.A.F. 2018)).

*2. Sentencing Argument*

During sentencing argument trial counsel reiterated aspects of his earlier argument on findings that Cpl Bravo "suffered a brush with death,"[70] that Appellant "almost killed one of his best friends,"[71] and that Cpl Bravo was in "unbearable pain"[72]. Because Appellant did not object to these statements at trial we review for plain error.

Appellant's argument is rooted in the fact that the evidence at trial revealed the gunshot wound suffered by Cpl Bravo did not result in a life-threatening injury. The members agreed with Appellant, finding him not guilty of aggravated assault by grievous bodily harm. However, they did find that he had committed an aggravated assault in which substantial bodily harm is inflicted, which requires a temporary but substantial disfigurement, or a temporary but substantial loss or impairment of function of any bodily member, organ, or mental faculty.[73] In contrast, grievous bodily harm means a bodily injury that involves a substantial risk of death, extreme physical pain, protracted or obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.[74]

We find that trial counsel's argument was largely supported by the evidence and did not rise to the level of plain error. Corporal Bravo suffered a gunshot wound to the abdomen from very close range. Corporal Bravo's trauma surgeon testified that he was incredibly lucky that the bullet did not pierce any of his internal organs. Additionally, trial counsel's argument that Cpl Bravo suffered unbearable pain was a reasonable characterization of the evidence. Witnesses present shortly after Cpl Bravo was shot testified about his reactions. One stated that "[h]e had a facial grimace, he was breathing in and out very quickly, like labored breathing, wincing with pain, his eyes were closed, and he was saying that it hurts."[75] Another stated that "[Cpl Bravo] was just screaming for help, screaming my name."[76] That same witness stated that Cpl

---

[70] R. at 514.

[71] R. at 515.

[72] R. at 517.

[73] *MCM*, pt. IV, para. 77.c.(1)(b) at IV-118.

[74] *MCM*, pt. IV, para. 77.c.(1)(c) at IV-118.

[75] R. at 264.

[76] R. at 283.

Bravo also said "don't let [me] die."[77] Additionally, Cpl Bravo's trauma surgeon testified that when he tried to stop the bleeding in the emergency room, Cpl Bravo "wasn't tolerating the pain well."[78] Thus, Appellant has not demonstrated the trial counsel's argument amounted to clear or obvious error.

Even had Appellant met the threshold for plain error, we do not find that Appellant has demonstrated that there was a reasonable probability that, but for the error, the outcome of the proceeding would have been different. As explained above, the members disagreed with trial counsel's characterization of the evidence, as shown through their finding Appellant guilty of the lesser included offense. We are confident that the members were not influenced by trial counsel's restatement of his closing argument when they determined Appellant's sentence. In his sentencing argument, trial counsel asked the members to award a 19-month sentence of confinement, while defense counsel argued for a sentence of time served (seven months). The members sentenced Appellant to nine months of confinement. Considering this in view of Appellant's convictions for negligently shooting another Marine and committing violations of a general order, we do not find merit in Appellant's argument that but for trial counsel's alleged error, the outcome of the proceeding would have been different.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[79]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[77] R. at 283.

[78] R. at 240.

[79] Articles 59 & 66, UCMJ.